S94A0277. LIVINGSTON v. THE STATE.
S94A0279. WALDRIP v. THE STATE.
S94A0280. WALDRIP v. THE STATE.
(444 SE2d 748)

SEARS-COLLINS, Justice.

This is a granted interim appeal in a case in which the state is seeking the death penalty against co-defendants Howard Kelly Livingston, John Mark Waldrip, and Tommy Lee Waldrip. OCGA § 17-10-35.1.

### *S94A0277. Howard Kelly Livingston*

1. Livingston argues that the trial court erred in denying his motion to prohibit the state from offering victim impact evidence at the sentencing phase of trial, should the jury find him guilty of the crimes charged. Additionally, Livingston appeals the trial court's denial of his constitutional attack and other related attacks on OCGA § 17-10-1.2, which governs the admissibility of victim impact evidence, as amended in the 1993 legislative session to apply to death penalty cases.

(a) In *Booth v. Maryland*, 482 U. S. 496 (107 SC 2529, 96 LE2d 440) (1987), the U. S. Supreme Court found "that because of the nature of the information contained in a [victim impact statement], it creates an impermissible risk that the capital sentencing decision will be made in an arbitrary manner." *Booth*, 482 U. S. at 505. As the capital sentencing decision must be based on considerations of the defendant's personal responsibility, moral guilt, and blameworthiness, the Court held the Eighth Amendment to the U. S. Constitution creates a per se bar to "the introduction of [victim impact evidence] at the sentencing phase of a capital murder trial."[1] *Booth*, 482 U. S. at 509.

Four years after handing down its decision in *Booth*, the U. S. Supreme Court overruled *Booth*, in part,[2] in *Payne v. Tennessee*, 501 U. S. 808 (111 SC 2597, 115 LE2d 720) (1991). Apparently responding

---

[1] This court recognized in *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988), that *Booth* concerns victim impact evidence introduced at the sentencing phase of the trial, not the guilt phase, and that

> [t]he fact that there is a victim, and facts about the victim *properly developed* during the course of the trial, are not so far outside the realm of "circumstances of the crime" that mere mention will always be problematic.

Id. at 756 (quoting *Brooks v. Kemp*, 762 F2d 1383, 1409 (11th Cir. 1985)).

[2] *Payne* left undisturbed *Booth*'s holding that the state could not use information or testimony concerning "a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence." *Sermons v. State*, 262 Ga. 286, 287 (417 SE2d 144) (1992) (quoting *Payne*, 111 SC at 2611, n. 2).

to a current "nationwide 'victim's rights' movement,"[3] *Payne*, 111 SC at 2613 (Scalia, J., concurring), the *Payne* Court held that the Eighth Amendment prohibition against cruel and unusual punishment does not erect a per se bar to the admission of victim impact evidence, and that a "State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed."[4] 111 SC at 2609.

(b) We agree with the United States Supreme Court's assessment in *Payne* that the Eighth Amendment prohibition against cruel and unusual punishment does not erect a per se bar to the introduction of all victim impact evidence, see *Sermons*, 262 Ga. at 287, and with that Court's determination that victim impact evidence can be admissible. However, we also recognize that under certain circumstances victim impact evidence could render a defendant's trial fundamentally unfair and could lead to the arbitrary imposition of the death penalty.

---

[3] In support of its decision to depart from *Booth*, the Supreme Court in *Payne* explained that

> while virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances, the State is barred from either offering "a glimpse of the life" which a defendant "chose to extinguish," or demonstrating the loss to the victim's family and to society which have resulted from the defendant's homicide.

(Citation omitted.) *Payne*, 111 SC at 2607. Faced with this perceived inequity, the Court, in order "to keep the balance true," 111 SC at 2609, held that it is not unconstitutional for the state to proffer evidence of the uniqueness of the victim as an individual in order to show the "specific harm caused by the [defendant]," 111 SC at 2608. As it is the defendant who is on trial in a capital murder case and who is, therefore, subject to the imposition of the death penalty, we cannot agree that Georgia courts are required to maintain some sort of "balance" between the victim and the defendant in a death penalty prosecution. This rationale would be inconsistent with long-standing Georgia law, which has never embraced a "tit-for-tat" doctrine with respect to defendants' and victims' rights. In point of fact, it has been a fundamental legal tenet since the founding of this country that a criminal defendant must be proved guilty beyond a reasonable doubt based on evidence establishing his guilt. "[T]he Constitution grants certain rights to the criminal defendant and imposes special limitations on the State designed to protect the individual from overreaching by the disproportionately powerful State." *Payne*, 111 SC 2627 (Stevens, J., dissenting). Furthermore, a great many "[r]ules of evidence are also weighted in the defendant's favor." Id. We find that in Georgia the rationale for admitting victim impact evidence in the sentencing phase of a death penalty prosecution is that the evidence may reflect on the defendant's culpability, and may therefore be relevant to the sentencing decision. See *Godfrey v. Francis*, 251 Ga. 652, 664 (308 SE2d 806) (1983); *Alderman v. State*, 254 Ga. 206, 210 (327 SE2d 168) (1985).

[4] Prior to the 1993 legislative amendment allowing the admission of victim impact evidence in death penalty cases, this court recognized the decision in *Payne*, but held that Georgia case law

> precludes the introduction of testimony at the sentencing trial [of a death penalty case] for the specific purpose of demonstrating the personal characteristics of the victim and the psychological, emotional, and physical impact of the crime on the victims' families and community.

*Sermons*, 262 Ga. at 288. We reaffirmed the holding of *Sermons* in *Moore v. State*, 263 Ga. 11 (427 SE2d 766) (1993).

This concern was paramount to the United States Supreme Court's decision in *Booth,* and in *Payne* that Court recognized that principles of due process prohibit the admission of victim impact evidence which renders a trial fundamentally unfair, *Payne,* 111 SC at 2608.

In Georgia, we have considered what will render a capital sentencing trial fundamentally unfair. The state may not offer evidence which would result in the imposition of the death penalty due to "passion, prejudice, or any other arbitrary factor." OCGA § 17-10-35 (c) (1). This statutory provision supports the mandate of the Georgia Constitution that "[n]o person shall be deprived of life . . . without due process of law." 1983 Ga. Const., Art. I, Sec. I, Par. I. Construing these provisions, this court has held that "the 'passion' proscribed by our law does not encompass all emotion, but only that engendered by prejudice, particularly racial prejudice . . . or [prejudice towards] religious preference," or other arbitrary factors. *Conner v. State,* 251 Ga. 113, 121 (303 SE2d 266) (1983). Additionally, we have held that it would be constitutionally impermissible for a jury to base its death penalty recommendation on the victim's class or wealth. *Ingram v. State,* 253 Ga. 622, 634 (323 SE2d 801) (1984). See also 1983 Ga. Const., Art. I, Sec. I, Par. XXV.[5] Clearly, some evidence which would fall within the broad parameters of OCGA § 17-10-1.2 could also reflect on those factors which this court and our state legislature have already found constitutionally irrelevant to death penalty sentencing. Indeed, even some legitimate victim impact evidence could inflame or unduly prejudice a jury if admitted in excess.

(c) Having recognized that under some circumstances victim impact evidence has the potential to render a death penalty sentence constitutionally infirm, we nevertheless uphold the constitutionality of § 17-10-1.2. We do so because our legislature has employed sufficient safeguards within the statute to ensure that victim impact evidence will not be admitted which reflects on factors which this court has found constitutionally irrelevant to death penalty sentencing, and which could result in the arbitrary and unconstitutional imposition of the death penalty. As precautionary measures, for example, the statute gives a trial court the discretion to exclude victim impact evidence altogether, § 17-10-1.2 (a) (1), limits evidence related to the impact of the offense upon the victim's family or community to that

---

[5] The Bill of Rights of the Georgia Constitution proclaims that "[t]he social status of a citizen shall never be the subject of legislation." 1983 Ga. Const., Art. I, Sec. I, Par. XXV. This provision was added to the Georgia Constitution in 1868 to promote equality in the eyes of the law amongst people of all races and classes, see McElreath, The Constitution of Georgia, §§ 107-116; Journal of the Georgia Constitutional Convention of 1867-68, pp. 10-13, and has been included in every constitution adopted in Georgia since that time. The principle underlying Par. XXV is that an individual's social status is not relevant to the evenhanded administration of justice. See *Scott v. State,* 39 Ga. 321, 324-327 (1869).

which is inquired of by the court, § 17-10-1.2 (b) (6), and states that victim impact evidence "shall be permitted only in such a manner and to such a degree as not to inflame or unduly prejudice the jury," § 17-10-1.2 (a) (1).[6] Obviously, victim impact evidence relating to constitutionally impermissible factors would "unduly prejudice" a jury. Thus, a trial court would abuse the unusually broad discretion granted by the statute by admitting such evidence. Because of the safeguards included in the statute, and because we presume that trial courts will follow the dictates of the statute in not admitting inflammatory or unduly prejudicial evidence, we affirm the trial court's holding that the statute, *as written*,[7] does not violate the Georgia Constitution.

(d) To help ensure that victim impact evidence does not result in the arbitrary imposition of the death penalty, we hold that the trial court must hear and rule prior to trial on the admissibility of victim impact evidence sought to be offered. This will, of course, necessitate that the state notify the defendant of victim impact evidence which it intends to offer, and will require the trial court to notify the defendant of the questions, if any, it intends to ask of the state's prospective witnesses at least ten days prior to trial. At the conclusion of the guilt-innocence phase of the trial, the trial court may reconsider any pre-trial decision regarding the admissibility of victim impact evidence.

(e) Livingston argues that because the crimes with which he is charged were committed prior to the effective date of OCGA § 17-10-1.2, application of the statute to his case constitutes an ex post facto law in violation of 1983 Ga. Const., Art. I, Sec. I, Par. X. We do not agree. OCGA § 17-10-1.2 modified the scope of evidence which may be offered at a sentencing trial in a death penalty case. It did not affect the manner or degree of punishment, and, as construed by the court, did not alter any substantive rights conferred on Livingston by law. As such, it is not an unconstitutional ex post facto law. *Todd v. State*, 228 Ga. 746 (187 SE2d 831) (1972).

2. For the reasons expressed in Division 5 of this court's opinion in *Rower v. State*, 264 Ga. 323 (443 SE2d 839) (1994), we affirm the trial court's denial of the state's discovery demand based on its decision that the state is not entitled to discover from the defendant that which the defendant would not be entitled to discover from the state, see OCGA § 17-7-211.

---

[6] While the trial court's order in this case dealt only with OCGA § 17-10-1.2, the reasoning in this opinion applies equally to OCGA § 17-10-1.1.

[7] We recognize some of the concerns raised in Justice Fletcher's concurrence and Presiding Justice Benham's dissent regarding the application of the victim impact statute; however, this appeal and this opinion concern only the constitutionality of the statute as written.

3. Livingston contends that the trial court erred in denying his motion for a separate trial, before his trial on guilt or innocence, to address his allegation that he is mentally retarded. However, we find no error because the legislature has provided that the jury in a capital trial determines "at the time of the trial on guilt or innocence" whether the defendant is mentally retarded. *Fleming v. Zant*, 259 Ga. 687, 688 (386 SE2d 339) (1989); OCGA § 17-7-131 (j).

Livingston argues that because the issue of mental retardation relates "solely" to his "eligibility for a death sentence," it must be considered apart from issues and evidence relating to guilt or innocence to avoid prejudicing the jury. However, we have held that evidence relating to the crime charged "may be highly probative of [a defendant's] mental abilities and materially relevant to the question of whether or not he is mentally retarded." *Zant v. Foster*, 261 Ga. 450, 451-452 (406 SE2d 74) (1991) (overruled on other grounds in *State v. Patillo*, 262 Ga. 259, 261, n. 1 (417 SE2d 139) (1992)).

We find no merit in Livingston's related attacks on OCGA § 17-7-131. While there may be advantages to a criminal defendant in having a trial apart from the guilt-innocence phase on the issue of mental retardation, such a change must come from the General Assembly.

### *S94A0279. John Mark Waldrip*

4. John Mark Waldrip's first two enumerations of error adopt the arguments of Howard Livingston with regard to the state's right to discovery and the admission of victim impact evidence. These issues were decided in Divisions 1 and 2 of this opinion.

5. Waldrip also argues that the trial court erred in denying his motion to "enjoin" the victim's family from showing emotion in the courtroom, and to require the victim's family and friends to sit where the jury cannot see them.

In October 1991, the trial court entered an order requiring the district attorney to notify the victim's family that it must avoid "any visible or audible display of emotion that would be disruptive" to trial proceedings. The trial court concluded that should such disruptive behavior take place in the courtroom, the court would take appropriate measures. In December 1992, in response to additional defense motions, the trial court entered a second order denying requests to have the victim's family sit where the jury cannot see them, and for the trial court to warn the family against disruptive courtroom behavior. The trial court reiterated that the district attorney would explain acceptable courtroom behavior to the victim's family, and concluded that if the defendants became aware of any objectionable behavior on the part of court spectators, they could bring it to the attention of the court and curative action would be taken.

Waldrip points to nothing in the record which indicates that disruptive behavior is likely to occur at trial. Further, he cites no authority for the prophylactic measures he suggests should be imposed. We hold that, under the circumstances presented by this case, the action taken by the trial court is appropriate.

*S94A0280. Tommy Lee Waldrip*

6. In his only enumeration of error, Tommy Lee Waldrip contends that the trial court erred in denying his motion to suppress the discovery of the victim's body.

Following Waldrip's arrest, the Sheriff of Dawson County made an emotional plea to him for help in locating the victim. No *Miranda* warnings were given. Waldrip made no response and the sheriff left the room.

Early the next morning, Waldrip informed a jailer that he wished to speak to the sheriff. When the sheriff went to his jail cell, Waldrip stated that he needed to talk about "what had happened." The sheriff replied that someone else would interview Waldrip at another time, and that he was only interested in locating the victim. Waldrip then described the general area in which the victim could be found. No *Miranda* warnings were given during this interview.

Approximately two hours later GBI agents interviewed Waldrip. They administered *Miranda* warnings and Waldrip signed a waiver of rights form. During this interview Waldrip agreed to take the agents to the victim's body. Waldrip made a tape-recorded statement that he was accompanying the agents freely and voluntarily, and then led them to where the victim was buried.

Waldrip argues that because his statement to the sheriff, made without benefit of *Miranda* warnings, provided information leading officers to the discovery of the victim's body, evidence of this discovery must be suppressed. He additionally argues that his statement to the sheriff was not voluntary, and that the trial court erred in failing to consider evidence of his low I.Q. and alleged mental illness in determining whether his statements were voluntary.

In a comprehensive order, the trial court ruled that because Waldrip's statement to the sheriff was not preceded by *Miranda* warnings, it must be excluded. However, the trial court concluded that Waldrip's statement to GBI agents, which was preceded by *Miranda* warnings, was voluntary and admissible at trial. Because this statement was voluntary, the trial court also denied Waldrip's motion to suppress discovery of the victim's body.

Where law enforcement officers conduct custodial interrogation of a suspect without the benefit of *Miranda* warnings, there is a presumption that the suspect's answers are compelled, and *Miranda v.*

*Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), dictates that they be suppressed. However, where the suspect is later given *Miranda* warnings, the admissibility of any subsequent statement turns on whether, under all the circumstances, that statement was knowingly and voluntarily made. *Oregon v. Elstad*, 470 U. S. 298, 309 (105 SC 1285, 84 LE2d 222) (1985). Further if the suspect made the initial statement voluntarily, the fact that it was not preceded by *Miranda* warnings will not taint a subsequent voluntary statement which had the benefit of those warnings. Id. at 318.

Thus, the trial court correctly ruled that Waldrip's initial statement to the sheriff must be excluded. Because the record supports the trial court's finding that both Waldrip's statement to the sheriff and his statement to the GBI were voluntarily made, the trial court did not err in ruling that Waldrip's statement to the GBI agents could be admitted in evidence. Likewise, because the discovery of the victim's body was the "fruit" of Waldrip's voluntary statement, it need not be suppressed. *Wilson v. Zant*, 249 Ga. 373, 378 (290 SE2d 442) (1982).

The record shows that the trial court considered evidence of Waldrip's I.Q. and alleged mental illness in determining whether his statements were voluntarily made. However, regardless of a suspect's mental state, "coercive police activity is a necessary predicate to the finding that [his] confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U. S. 157, 167 (107 SC 515, 93 LE2d 473) (1986). As there is no evidence of coercive police activity in this case, Waldrip's contention that his statements were not voluntary under the Fourteenth Amendment must fail.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs specially, and Benham, P. J., who dissents.*

FLETCHER, Justice, concurring.

I fully concur with the majority opinion. I write separately to stress that *Payne v. Tennessee*, 501 U. S. 808 (111 SC 2597, 115 LE2d 720) (1991) addresses only the narrow issue of the admissibility of evidence and argument relating to the personal characteristics or individuality of the victim and the impact of the crime on the victim's family. *Payne*, 111 SC at 2604, 2611, n. 2, and 2614 (Souter, J., concurring). *Payne* also warns that if

> a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment.

Id. at 2612 (O'Connor, J., concurring); see also id. at 2608. With those

background considerations, the General Assembly has attempted to narrowly draft OCGA § 17-10-1.2 to permit victim impact evidence "only in such a manner and to such a degree as not to inflame or unduly prejudice the jury." Id. at (a) (1).

Georgia's district attorneys are skilled in the law and I believe they understand that the duty of the state's attorney "in a criminal prosecution is not that [the state] shall win a case but that justice shall be done." Evidence which "inflames or unduly prejudices the jury" violates due process and denies the accused's constitutionally protected rights as pronounced by both the Supreme Court and this court. With this in mind, I urge district attorneys to cautiously approach the use of such victim impact evidence. It benefits neither the victim, the victim's family, nor the public if successful advocacy results in the admission of irrelevant, prejudicial and inflammatory evidence which will then require new sentencing trials and further unduly delay the finality of death penalty cases.

CARLEY, Justice, concurring specially.

In *Payne v. Tennessee*, 501 U. S. 808 (111 SC 2597, 2609, 115 LE2d 720) (1991), the Supreme Court of the United States, overruling its prior cases, held that

> [a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

In so holding, the Supreme Court recognized the inherent potential for injustice created by the preclusion of victim impact evidence.

> [W]hile virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances, the State is barred from either offering "a glimpse of the life" which a defendant "chose to extinguish," [cit.], or demonstrating the loss to the victim's family and to society which have resulted from the defendant's [act of] homicide.

*Payne v. Tennessee*, 111 SC at 2607.

After *Payne* was decided, the General Assembly of Georgia amended OCGA § 17-10-1.2 so as to authorize the admission of victim impact evidence in capital cases. It is the limited duty of this court now to construe OCGA § 17-10-1.2 in accordance with the legislative intent which prompted its amendment. I agree with the major-

ity's ultimate conclusion that OCGA § 17-10-1.2 is constitutional under our state constitution. I do not agree, however, with the premise upon which the majority bases its ultimate conclusion. The fundamental error which I perceive in the majority's analysis is evidenced by footnote 3 of its opinion. Therein, the majority rejects the underlying rationale of *Payne* as a basis for construing OCGA § 17-10-1.2 and instead predicates its statutory construction exclusively upon *former* "long-standing Georgia law" and upon *former* decisions of this court explicating a "rationale for admitting victim impact evidence in the sentencing phase of a death penalty prosecution."

Notwithstanding any former provisions or rationales, the Supreme Court of the United States has now removed a constitutional impediment to the admission of victim impact evidence and an effort to change our law has since been undertaken through our legislature's amendment of OCGA § 17-10-1.2. It is our responsibility to give effect to that change in accordance with applicable rules of statutory construction.

In my opinion, it was with the clear intent " 'to keep the balance true' " that our legislature amended OCGA § 17-10-1.2 and authorized the admission of victim impact evidence in capital cases in this state. *Payne v. Tennessee*, 111 SC at 2609. Accordingly, it is with that intent, not in accordance with any former provisions and rationales, that this court must now construe OCGA § 17-10-1.2. I submit that the majority opinion fails to give full effect to that legislative intent and, for that reason, I concur specially.

OCGA § 17-10-1.2 must certainly be construed in connection with Art. I, Sec. I, Par. I of the Ga. Const. of 1983, which provides: "No person shall be deprived of life . . . except by due process of law." However, *nothing* in OCGA § 17-10-1.2 prohibits the defendant who has been found guilty of murder from introducing evidence in mitigation of his sentence. The focus of victim impact evidence is not upon the convicted murderer, but upon the victim himself, his family and society. The due process clause of neither the federal nor our Georgia Constitution renders inadmissible evidence which is otherwise relevant as

> offering "a glimpse of the life" which a defendant "chose to extinguish," [cit.], or demonstrating the loss to the victim's family and to society which have resulted from the defendant's [act of] homicide.

*Payne v. Tennessee*, 111 SC at 2607. Indeed, the very purpose of victim impact evidence is to counteract that very broad range of mitigating evidence which the defendant is authorized to introduce under the due process clause. " '[J]ustice, though due to the accused, is due

to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.'" *Payne v. Tennessee*, 111 SC at 2609. To counteract that broad range of mitigating evidence, a state, through its legislature,

> may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too *the victim is an individual whose death represents a unique loss to society and in particular to his family.*" [Cit.]

(Emphasis supplied.) *Payne v. Tennessee*, 111 SC at 2608.

Thus, it is the "unique loss" caused by a defendant's act of murder which our legislature has determined to be a relevant sentencing factor. If evidence relates to the "unique loss" resulting from the murder of the victim, then that evidence does not relate to a constitutionally impermissible factor under the due process clause and its admission would *not* render a trial fundamentally unfair. *Payne v. Tennessee*, 111 SC at 2608.

> "[I]t is an affront to the civilized members of the human race to say that at sentencing in a capital case, a parade of witnesses may praise the background, character and good deeds of [the] [d]efendant . . . , without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon [the] victims." [Cit.]

*Payne v. Tennessee*, 111 SC at 2609.

OCGA § 17-10-1.2 must also be construed in connection with Art. I, Sec. I, Par. XXV of the Ga. Const. of 1983, which provides: "The social status of a citizen shall never be the subject of legislation." However, the social status of a citizen is certainly *not* the "subject" of OCGA § 17-10-1.2. To the contrary, the only "subject" of that statute is the "uniqueness" of any and all murder victims *regardless* of their social status.

> [V]ictim impact evidence is not offered to encourage comparative judgments of this kind — for instance, that the killer of a hardworking devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead *each* victim's "uniqueness as an individual

human being," whatever the jury might think the loss to the community resulting from his death might be. The facts of [*South Carolina v.*] *Gathers*[, 490 U. S. 805 (109 SC 2207, 104 LE2d 876) (1989)] are an excellent illustration of this: the evidence showed that the victim was an out of work, mentally handicapped individual, perhaps not, in the eyes of most, a significant contributor to society, but nonetheless a murdered human being.

(Emphasis in original.) *Payne v. Tennessee*, 111 SC at 2607.

Thus, OCGA § 17-10-1.2 does not purport to authorize disparate sentencing treatment of murderers based upon the social status of their victims. It purports only to authorize *equal evidentiary treatment* for murder victims notwithstanding their social status. To that end, OCGA § 17-10-1.2 authorizes the State to offer evidence of " 'a glimpse of the life' which a defendant 'chose to extinguish,' [cit.], or . . . the loss to the victim's family and to society which have resulted from the defendant's [act of] homicide." *Payne v. Tennessee*, 111 SC at 2607. " '[A] glimpse of the life' which a defendant 'chose to extinguish' " certainly may have occasion to touch upon the victim's wealth, his race or ethnicity, his class, his religion, his educational background or any number of other factors which made him a "unique" individual. A construction of OCGA § 17-10-1.2 as imposing a blanket preclusion on the admission of such evidence as would afford the jury " '[a] glimpse of the life' " of the "unique" individual who was murdered, has the effect of turning

the victim into a "faceless stranger at the penalty phase of a capital trial," [cit.] . . . [and] deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

*Payne v. Tennessee*, 111 SC at 2608.

Accordingly, our state constitution does not preclude the admission of such evidence under OCGA § 17-10-1.2. That different juries may return different sentences for different defendants who have murdered different victims is no reason to construe OCGA § 17-10-1.2 so as to preclude any jury from hearing all the relevant evidence regarding the actual sentence to be imposed upon a specific defendant for the murder of a unique individual.

"[T]he rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the factfinder, who would have the benefit of cross examination and contrary ev-

idence by the opposing party." [Cit.]

*Payne v. Tennessee*, 111 SC at 2607.

The function of this court is not to rewrite legislation, but to construe that legislation in conformity with the legislative intent with which it was enacted. Accordingly, while I agree that OCGA § 17-10-1.2 is not unconstitutional, I cannot concur in the majority's rewriting of that statute so as to thwart the legislative intent, which was to authorize the admission of victim impact evidence in accordance with the broad mandate of the decision of the Supreme Court in *Payne v. Tennessee.*

BENHAM, Presiding Justice, dissenting.

While I find Division 1 of the majority opinion to be a valiant effort to curtail the far-reaching effect of Georgia's victim impact statement statute,[8] I must respectfully dissent and write separately to point out the statute's unconstitutionality and the catastrophic effect the admission of victim impact statements will have on our efforts to assure a fair trial for every defendant.

The majority opinion, in reliance on *Payne v. Tennessee*, 501 U. S. 808 (111 SC 2597, 115 LE2d 720) (1991), holds that the victim impact statement statute is constitutional under the Eighth Amendment of the United States Constitution. Since the U. S. Supreme Court is entitled to the last word on that issue and has spoken, I am compelled to agree. However, the majority opinion also holds that the statute is valid under the Georgia Constitution. It is that holding with which I take issue.

Some background information on the victim impact statement statute is necessary to understand fully how we have reached this particular cross-road. In the federal arena, there have been three significant developments concerning the admissibility of victim impact statements. In *Booth v. Maryland*, 482 U. S. 496, 508 (107 SC 2529, 96 LE2d 440) (1987), the United States Supreme Court forbade the use of victim impact statements, holding that such a statement "serve[s] no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." The court found the statement to be offensive to Eighth Amendment protections because it "creates an impermissible risk that the capital sentencing decision will be made in an arbitrary manner." Id. at 505. *Booth* was followed by *South Carolina v. Gathers*, 490 U. S. 805 (109 SC 2207, 104 LE2d 876) (1989), which once again held the victim impact statement to be impermissible. However, just two years later, in *Payne v. Tennessee*, supra, the U. S. Supreme

---

[8] OCGA §§ 17-10-1.1; 17-10-1.2.

Court reversed itself and found that the Eighth Amendment to the United States Constitution does not erect a "per se bar" to the use of the victim impact statement.

In Georgia there have been four significant developments concerning the admission of the victim impact statement. First, § 27-2534 of the 1933 Georgia Code provided in relevant part that in presentence hearings in felony cases,

> the jury shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant . . . .

No mention whatsoever was made of the victim impact statement or of testimony concerning the psychological effects of the crime on the victim, the victim's family or the community. Second, OCGA § 17-10-1.1, enacted in 1985, provided in pertinent part that "except in cases in which life imprisonment or the death penalty must be imposed . . . the judge may consider a victim impact statement in determining the appropriate sentence. . ." Third, in *Sermons v. State*, 262 Ga. 286 (1) (417 SE2d 144) (1992), we recognized *Payne*, supra, but held that *Payne* only permitted and did not require that victim impact information be admitted. This court looked to the rule stated in *Muckle v. State*, 233 Ga. 337 (2) (211 SE2d 361) (1974), that victim impact evidence was not within the scope of statutorily approved evidence in aggravation, and held that victim impact evidence remained inadmissible. That position was reaffirmed in *Moore v. State*, 263 Ga. 11 (8) (427 SE2d 766) (1993). Fourth, one year after *Moore*, in 1993, our legislature amended the victim impact statement statute to permit use of victim impact statements in the penalty portion of death penalty cases. That amendment is the subject of this appeal.

1. In enacting legislation, the legislature seeks to strike a balance between competing interests. As it relates to the victim impact statement statute, the legislature has sought to balance the right of the defendant to have a fair trial against the right of the state to humanize the victim. The role of the judiciary is to determine whether the balance struck comports with constitutional requirements.

What I seek to do in this dissent is to consider the constitutionality of the victim impact statement statute under Georgia's constitution. Since the *Booth* decision, our court has had numerous opportunities to consider the victim impact statement in light of our own constitution but we have failed to do so. I can only conclude that we have not acted because we found the *Booth* holding to be consistent with our own constitution. In *Sermons*, supra, we decided the issue of the victim impact statement on the basis of Georgia's statutory law

rather than reaching the state constitutional issue, a course consistent with our practice of not reaching constitutional issues unless necessary. *Todd v. State*, 205 Ga. 363 (2) (53 SE2d 906) (1949).

On several occasions we have said that Georgia can give its citizens more rights under its own constitution than are provided under the United States Constitution.[9] In deciding under our constitution whether all victims should stand equal before the law, we must draw from the well-spring of Georgia history, keeping in mind that Georgia is one of the thirteen original colonies which, unlike the subsequently-formed states which drew strength from the central government, furnished strength to the central government from our storehouse of rights. But in doing so, we did not leave our state constitutional cupboard completely bare and entirely bereft of protection for our own citizens.

In fact, as judges we have a sworn duty to interpret our own constitution and not merely to follow blindly the interpretation given the federal constitution.[10] Therefore, what I seek to do in my dissent is to breathe life into our own constitution and not treat it merely as some relic to be placed in a museum for viewing only. Accordingly, any reference to federal decisions in support of the positions I take is merely for instructive and illustrative purposes, and is not intended as authority for the positions which I take, authority for which I find in the Georgia Constitution.

Four paragraphs of Art. I, Sec. I of the Georgia Constitution are pertinent to this consideration: Pars. I, II, XVII & XXV.

> (a) Life, liberty, and property.
> No person shall be deprived of life, liberty, or property except by due process of law.

---

[9] See, e.g., *State v. Miller*, 260 Ga. 669, 671 (398 SE2d 547) (1990) (finding 1983 Georgia Constitution provides broader protection than the First Amendment); *Green v. State*, 260 Ga. 625, 627 (398 SE2d 360) (1990) (finding State Constitution grants a broader right against self-incrimination than the U. S. Constitution); *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989) (holding state constitutional guarantee against cruel and unusual punishment is more extensive than federal constitutional standard).

[10] OCGA § 15-2-3. Oath of Justices; compensation
(a) Before entering on the discharge of their duties, the Justices shall take the oath prescribed for judges of the superior courts, along with all other oaths required for civil officers.
OCGA § 15-6-6. Oath of judges
"I swear that I will administer justice without respect to person and do equal rights to the poor and the rich and that I will faithfully and impartially discharge and perform all the duties incumbent on me as judge of the superior courts of this state, according to the best of my ability and understanding, and agreeably to the laws and Constitution of this state and the Constitution of the United States. So help me God."

Ga. Const. 1983, Art. I, Sec. I, Par. I.

During the sentencing phase of a death penalty trial, the state may offer evidence of any of the statutory aggravating circumstances alleged in the indictment pursuant to OCGA § 17-10-30. Additionally, the jury is authorized to consider "any mitigating circumstances or [non-statutory] aggravating circumstances otherwise authorized by law." OCGA § 17-10-30 (b). However, the state may not offer evidence which would result in the imposition of the death penalty due to "passion, prejudice, or any other arbitrary factor." OCGA § 17-10-35 (c) (1); 1983 Ga. Const., Art. I, Sec. I, Par. I. As the U. S. Supreme Court stated in *Gregg v. Georgia*, 428 U. S. 153, 189 (96 SC 2909, 49 LE2d 859) (1976), "that discretion [of the jury] must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

In Georgia, the jury is permitted to consider mitigating and non-statutory aggravating evidence relating to "the character of the defendant . . . and the circumstances of the crime on trial." *Ford v. State*, 257 Ga. 461, 463 (360 SE2d 258) (1987); *Zant v. Stephens*, 250 Ga. 97, 100 (297 SE2d 1) (1982). Evidence admitted for these purposes serves to narrow the jury's discretion in determining whether to impose the death penalty because it is relevant to the issue of punishment for a specific crime committed by the particular defendant on trial. See, e.g., *Horton v. State*, 249 Ga. 871, 874 (295 SE2d 281) (1982). Additionally, the statutory aggravating circumstances, OCGA § 17-10-30 (b), which focus on the nature of the crime, "limit to a large degree" the jury's discretion in imposing the death penalty. *Zant v. Stephens*, supra, 250 Ga. at 100.

In sharp contrast to these limitations, OCGA § 17-10-1.2 not only fails to narrow the jury's discretion to impose the death penalty, but permits the jury to base its determination of punishment on a broad range of arbitrary and highly prejudicial factors which relate neither to the nature of the crime nor the character of the defendant.

I would hold that OCGA § 17-10-1.2 is unconstitutionally overbroad, advancing far beyond the presentation of evidence which enables the jury to see the victim's "uniqueness as an individual human being." *Payne*, supra, 111 SC at 2607. Rather than focusing on evidence which would define the victim's personal characteristics while in life, the statute permits evidence of the ripple-effect of the victim's *death* on both the victim's family and the victim's community. Such evidence is irrelevant to the state's portrayal of the victim as a human being and infuses the sentencing trial with arbitrary factors on which the jury may determine to impose the death penalty.

Further, admission of victim impact evidence shifts the focus of the sentencing trial from the defendant and the nature of the crime to the value the victim's family and community place on the victim's

life. The state "cannot make the existence of . . . an identifiable characteristic of . . . the victim an issue per se and justification for a death sentence." *Ingram v. State*, 253 Ga. 622, 634 (323 SE2d 801) (1984). More insidious is the statutory permission given the trial court to invite a detailed narration of the emotional and economic sufferings of the victim's family and members of the victim's community resulting from the victim's death. These inflammatory factors cannot but infect the jury's decision-making process, rendering the sentencing trial fundamentally unfair and denying the due process of law guaranteed in the Georgia Constitution.

> (b) Protection to person and property; equal protection.
>     Protection to person and property is the paramount duty
>     of government and shall be impartial and complete. No
>     person shall be denied the equal protection of the laws.

Ga. Const. 1983, Art. I, Sec. I, Par. II.

On previous occasions I have raised the issue of the equal treatment of all who come before the courts of this state. In considering the jury selection process in *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993), I cautioned against the unequal treatment of prospective jurors. In *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), I warned against creating a system where defendants will engage in character assassination of the victim. In *Barge-Wagener Constr. Co. v. Morales*, 263 Ga. 190 (429 SE2d 671) (1993), I cautioned against the creation of a " 'throw-away' class of workers." Here, I caution against the creation of a throw-away class of victims by use of the victim impact statement and the re-victimization of the relatives of victims by inquiry into their backgrounds and that of their deceased loved one.

One of the hallmarks of the American system of jurisprudence is that all citizens stand equal before the law and we have put in place rules of substantive and procedural law to assure this sense of equality. Unlike other societies which have a homogenous population, we in America are heterogenous in our makeup. We have people of different races, religions and cultures. Such diversity requires us to go to great lengths to treat all citizens equally, and nowhere is that notion of equality more carefully scrutinized than in our court system. However, the unchanneled scope of victim impact evidence which is admissible under the statute creates a grave risk that the jury may conclude that it is permissible for its decision to impose the death penalty to be based on such constitutionally impermissible factors as race, religion, (*Conner v. State*, 251 Ga. 113, 121 (303 SE2d 266) (1983)), class, or wealth. *Ingram v. State*, supra.

(c) Bail; fines; punishment; arrest, abuse of prisoners.
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison.

Ga. Const. 1983, Art. I, Sec. I, Par. XVII.

Although *Payne,* supra, reflects a conclusion that the arbitrary and capricious enforcement of capital punishment which will follow the admission of broad-scale victim impact evidence does not offend national standards,

[t]he "standard of decency" that is relevant to the interpretation of the prohibition against cruel and unusual punishment found in the Georgia Constitution is the standard of the people of Georgia, not the national standard. Federal constitutional standards represent the minimum, not the maximum, protection that this state must afford its citizens. *Harris v. Duncan,* 208 Ga. 561 (67 SE2d 692) (1951).

*Fleming v. Zant,* 259 Ga. 687, 690 (386 SE2d 339) (1989). I believe that the standard of decency of the people of Georgia is offended by the admission of evidence about the victim which is irrelevant to the issue of the defendant's personal blameworthiness for the killing of another human being. So too is our standard of decency violated by a policy that guarantees capriciousness in the implementation of the death penalty by consideration of elements which cannot be ascertained prior to the commission of the crime and cannot, therefore, be applied consistently in different cases. Notwithstanding the federal judiciary's recognition of less demanding standards, this state should retain its own standards and apply them to assure fair and impartial trials.

(d) Status of the citizen.
The social status of a citizen shall never be the subject of legislation.

Ga. Const. 1983, Art. I, Sec. I, Par. XXV.

Not only does the admission of victim impact statements create two classes of defendants, those who kill worthy members of society and those who kill less worthy citizens, it necessarily creates classes of victims: those whose lives were so worthwhile that their killer should be put to death, and those whose lives are so worthless that their killer should only receive a sentence that will put them back into society in less than ten years.

In the trial of capital offenses in the past, we have focused on the

conduct of the defendant and we have looked to matters of defendant culpability, rather than the background of the victim or the impact on the survivors, in determining what punishment should be meted out. *Booth*, supra. That is not to say that we have had a prohibition against humanizing the victim. That can and should be done, however, without making the victim the focus of the inquiry. The statute upheld by the majority opinion, however, not only makes the victim the focus of the inquiry, but invites the social status of the victim to be the deciding factor in determining whether a defendant should live or die. To suggest that such a statute does not make social status its subject is to ignore reality.

I conclude, for the reasons stated above, that the victim impact statement statute at issue here fails to conform to the high standards established by our constitution's guarantees.

2. In reaching the conclusion that the statute is constitutional, the majority opinion has failed to consider a myriad of problems that will be created by the allowance of the victim impact statement:

(1) To what extent will the victim's background be the subject of inquiry by the defendant?

(2) Under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), what must the state disclose regarding the background of the victim or other witnesses who furnish information for the victim impact statement?

(3) Will failure to investigate, pursue and present information about the victim's background by defense counsel give rise to a valid claim of ineffectiveness of counsel?

(4) Will fashioning instructions for the jury in a victim impact statement case become a judicial nightmare?

(5) Will there be mini-trials within the sentencing phase of the trial just to consider various victim impact evidence?

Even the majority opinion in *Payne* acknowledges that victim impact evidence can be so unduly prejudicial that it violates the due process guarantees of the U. S. Constitution. Id. at 111 SC 2608. I am convinced that the statute we are considering is so broad that it denies due process to all defendants in death penalty trials. The majority has sought to alleviate those problems by limiting the application of the statute, but those limits will create such burdens on the trial of death penalty cases that they will themselves violate due process. The questions I have raised above and others not foreseen today will vex and hamper the administration of justice beyond the limits set by the due process guarantees of the Georgia Constitution.

3. The prohibition against admission of a victim impact statement is rooted in the belief that all people stand equal before the law, defendants and victims alike. The value of a rich man's life is just as important to society as that of a poor man. Life gains its value not

from one's status but from one's existence and the State should never be in the position of passing on the value of one's life to society in general.

With the victim impact statement statute, we will begin a journey down the treacherous path of determining the relative worth of citizens in seeking the death penalty for the accused. We will force prosecutors to consider matters of race, education, economics, religion and ethnicity of the victims and their survivors in deciding whether to seek imposition of the death penalty on the accused. Not only will due process suffer but the image of justice will be permanently scarred.

We should not take lightly the image of justice. To signify our notion of equality we have as a symbol of justice a woman blindfolded, with evenly-balanced scales, holding a sword. The sword symbolizes our willingness to fight for the rights of all our citizens. The scales symbolize the equality of treatment before the courts. And the blindfold symbolizes that the law is not a respecter of person or position. Unfortunately, today's decision rips the blindfold from the symbol of justice and forces us to take into consideration factors which heretofore have had no place in the fair administration of justice.

My fear is that the virus of the victim impact statement will so infect the sentencing process that the trial will be rendered fundamentally unfair, thereby greatly increasing the likelihood of appellate reversals of otherwise valid convictions. No matter how good and noble the intentions of the legislature in enacting the statute, its attempt to show the uniqueness of the individual victim will inevitably encourage sentencing juries to discriminate among victims and thereby aggravate already festering sores of race, ethnicity and class.

The conclusion is inescapable that the victim impact statement as an evidentiary tool is too unmanageable and totally irrelevant to the trial of a capital offense; therefore, to allow such evidence would place an undue and unwarranted burden on constitutionally protected rights under the Georgia Constitution. Consequently, I would hold the statute violative of the Georgia Constitution's guarantees of due process and equal protections and its prohibitions against cruel and unusual punishment and legislation with social status as its subject. Accordingly, I respectfully dissent.

DECIDED JUNE 27, 1994 —
RECONSIDERATIONS DENIED JULY 21, 1994.

*Michael Mears, Valpey & Walker, Harold M. Walker, Stephen B. Bright, Colleen Q. Brady, Barry J. Fisher,* for appellant (case no. S94A0277).

*Miller, Rucker & Associates, Curtis W. Miller, Stanley W. Robbins,* for appellant (case no. S94A0279).

*J. Richardson Brannon, Watson & Watson, Anne H. Watson,* for appellant (case no. S94A0280).

*Lydia J. Sartain, District Attorney, Lee Darragh, William M. Brownell, Jr., Assistant District Attorneys,* for appellee.