## A00A1091. SMITH v. THE STATE.
### (538 SE2d 825)

SMITH, Presiding Judge.

Gregory Smith was convicted by a jury of the offense of burglary. His motion for new trial was denied, and he appeals. We find no reversible error with respect to Smith's conviction. But because the record is unclear as to whether Smith was afforded an opportunity to challenge the validity of prior convictions used in sentencing him as a recidivist, we remand this case for resentencing in accordance with *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).

1. Smith contends that the trial court erred in admitting his statement made during a custodial interrogation, before the interrogating officer administered any *Miranda* warnings.

Testimony admitted at trial and during the *Jackson-Denno* hearing shows that while on patrol, Officer James Joyner of the Athens-Clarke County Police Department saw a man, identified by Joyner at trial as Smith, carrying a television toward a car parked on the side of the road near an apartment complex. Smith was stepping over a guardrail toward the car when Joyner first noticed him. Joyner stopped and exited his vehicle as Smith was attempting to load the television into the car. Joyner identified himself as a police officer and told Smith to turn toward him so he could see his hands. Smith did not follow Joyner's directions and remained in a crouched position, with his back toward Joyner. Smith appeared to be talking to the driver of the car, his girlfriend. After telling Smith several times to turn toward him, Joyner ordered Smith to the ground and placed handcuffs on him. Joyner told Smith "that he was not under arrest" but that Joyner was placing him in handcuffs for his protection until he "found out what was going on with the situation which [he] consid-

ered to be unstable and suspicious."

Joyner asked no questions of Smith, but in reply to Joyner's explanation as to why he handcuffed him, Smith told Joyner that he had seen a car parked on the side of the road, as well as two men "that were doing something in the woods." According to Joyner, Smith said that when the men saw him, they drove away, and he found a television and VCR in the woods where the other car had been parked and "decided to take it." Joyner placed Smith inside his patrol car while he investigated further and found evidence of a recent burglary at one of the apartments at the complex. Meanwhile, a backup patrol car arrived, and Smith's girlfriend was questioned and placed inside. Near Smith's car, "just over the guardrail within three or four feet of the car," Joyner found a VCR, two remotes, and a small crowbar. Joyner also found evidence of forced entry into the apartment complex.

While Joyner was conducting his investigation, Officer Chris Guest arrived at the scene. After talking with Joyner, but before Joyner actually placed Smith under arrest for burglary, Guest asked Smith what was "going on." Smith told Guest essentially the same story he earlier told Joyner — that he found the television after two other men had driven away. In response, Guest told Smith that "it doesn't look good for you being as you were loading [the television] up" and that he wanted to talk further with Smith at the police department. Guest acknowledged that his intent during this conversation with Smith was to "cause him to rethink his statement and to give what [Guest] believed to be a more forthright statement." Guest also explained that through this conversation, he was able to convince Smith to be honest with him.

A short time after Guest's initial conversation with Smith, while Guest was talking with Joyner, Smith motioned Guest toward Joyner's patrol car and told Guest that he was unemployed, "was desperate for money," and was ready to talk with Guest. According to Guest, Smith said, "[L]et's go back to the police department." Joyner then arrested Smith. Smith was taken to the police department, where Guest administered *Miranda* warnings to Smith, and where Smith signed a waiver of rights form acknowledging his willingness to answer questions. Smith then gave a statement to Guest. In this statement, reduced to writing by Guest and signed by Smith, Smith admitted to breaking into an apartment by using a crowbar and stealing a television and VCR. He also stated that his girlfriend was not involved in the burglary.

Smith argues that any custodial statement made by him without the benefit of *Miranda* warnings should not have been admitted. Indeed, "[w]here law enforcement officers conduct custodial interrogation of a suspect without the benefit of *Miranda* warnings, there is

a presumption that the suspect's answers are compelled." *Livingston v. State*, 264 Ga. 402, 407 (6) (444 SE2d 748) (1994). Such statements must be suppressed. Id. at 407-408. And Smith's on-the-scene statement was made in response to custodial interrogation.

> The term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

(Punctuation omitted.) *Cottingham v. State*, 206 Ga. App. 197, 200 (4) (424 SE2d 794) (1992). An officer's intent may bear on whether the officer should have known that his "words or actions were reasonably likely to evoke an incriminating response." Id. at 201 (4). Guest admitted he intended to invoke a "more forthright statement" when he told Smith that "it doesn't look good." In this circumstance, we must conclude Guest knew or should have known that his words to Smith were "reasonably likely to elicit an incriminating response" from Smith. Smith's initial incriminating statement, made without the benefit of *Miranda* warnings, should have been suppressed.

This does not end our inquiry, however. After making his on-the-scene statement, Smith was taken to the police station, where he was given *Miranda* warnings by Guest and where he confessed to the crime. The admissibility of the latter statement depends on whether, under all the circumstances, it was knowingly and voluntarily given. *Livingston*, supra at 408. Guest testified he made no promises or threats to Smith in an effort to obtain a statement, that Smith did not appear to be under the influence of drugs or alcohol, and that after he informed Smith of the charge against him and read *Miranda* warnings to Smith, Smith appeared willing to talk and did not request a lawyer. Under these circumstances, we conclude that Smith's statement made after he was administered *Miranda* warnings was freely and voluntarily given, and any error in admitting his previous statement was therefore harmless. See *Jackson v. State*, 272 Ga. 191, 194-195 (3) (528 SE2d 232) (2000).

2. Given Smith's statement made at the police station, as well as testimony by the victim that her television and VCR were taken without her permission from her apartment, we find no merit in Smith's contention that the evidence was insufficient to convict him. See, e.g., *Hawkins v. State*, 219 Ga. App. 484, 485 (1) (465 SE2d 527) (1995).

3. In three enumerations of error, Smith makes similar arguments concerning the use of three earlier convictions to sentence him

as a recidivist. While we conclude that these arguments are moot, by virtue of the Supreme Court's holding in *Nash*, supra, affirming *Nash v. State*, 233 Ga. App. 75 (503 SE2d 23) (1998), a brief recitation of the facts and Smith's arguments is necessary to our analysis.

Following Smith's conviction, the trial court conducted a sentencing hearing in which the State sought to introduce three prior convictions entered on guilty pleas.[1] Because no plea hearing transcripts were available, and because the records in those cases did not otherwise show that Smith had been informed of his rights under *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), Smith objected to the use of the pleas to sentence him as a recidivist. Relying on the then-controlling rule set out in *Pope v. State*, 256 Ga. 195, 209-210 (17) (345 SE2d 831) (1986), he argued that the State had failed to meet its burden of showing that the pleas had been knowingly and voluntarily entered. In *Pope*, the State sought to use prior guilty pleas to enhance Pope's sentence and Pope objected to the use of these pleas on the ground that they were involuntarily made. The Supreme Court of Georgia held that the State bore the burden of proving the validity of the pleas. Id. at 209-210.

In response to Smith's arguments, the prosecutor extensively argued concerning the practice in the circuit of entering pleas only after a lengthy colloquy between the prosecutor and judge to establish a knowing and voluntary waiver of the defendant's rights, or after the defendant had signed a plea petition indicating his understanding of his rights. The prosecutor contended that the trial court could "take notice of the accepted and standard and utterly routine practice of taking guilty pleas in the superior courts of this circuit."

Following further argument by Smith, the trial court announced that it would continue the hearing to allow the parties to submit briefs and stated that either side could present further evidence at the continued hearing. Approximately one month later, the hearing reconvened, and over Smith's objection, the trial court allowed the prosecutor to question the three attorneys who represented Smith when he entered his previous pleas. Although the three attorneys testified to some extent concerning the usual custom or practice of taking pleas in the circuit, none testified concerning Smith's actual pleas, either because they had no independent recollection of the specific pleas, or because they believed such testimony would violate the attorney-client privilege or would violate their duty to avoid testifying against their client.

---

[1] The prosecutor initially sought to introduce four prior convictions obtained by way of guilty pleas but apparently learned that Smith was not the same "Gregory Smith" named on one of the pleas. The prosecutor therefore introduced only three prior convictions.

Near the end of the hearing, defense counsel brought to the trial court's attention the whole court decision of *Nash v. State*, supra, 233 Ga. App. 75, decided the day before the reconvened hearing. In *Nash*, the State sought to use a prior conviction in aggravation of punishment. Testimony was presented concerning the custom of the trial court of informing "defendants of all the rights they were waiving and the consequences of their pleas and to ensure that the pleas were knowingly and voluntarily entered." Id. at 76 (2). Nash appealed the trial court's ruling that his earlier plea had been knowingly and voluntarily entered. This court relied on *Parke v. Raley*, 506 U. S. 20 (113 SC 517, 121 LE2d 391) (1992), to affirm, concluding that the guilty plea, attacked by Nash in a collateral proceeding, as opposed to an appeal from a conviction entered on a guilty plea, was to be given the longstanding "presumption of regularity." *Nash*, supra, 233 Ga. App. at 79. Here, based on this court's decision in *Nash*, the trial court ruled that evidence of Smith's prior convictions was admissible.

After the trial court entered its ruling in this case, the Supreme Court granted certiorari in *Nash*, affirmed, and overruled *Pope*, supra. *Nash*, supra, 271 Ga. 281. In so doing, the Supreme Court reallocated the burden of proving the validity of a guilty plea attacked in a collateral proceeding. Under the new analysis, once the State has shown that a defendant was represented by counsel in all felony cases and misdemeanor proceedings resulting in imprisonment, the "presumption of regularity" is applied, and the defendant must "produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." Id. at 285.

Smith argues that "[t]he *Nash* holding should not have been applied to require [him] to come forward with evidence negating the voluntariness of prior guilty pleas." We do not agree. It is true that during the initial hearing, *Pope*, supra, represented the controlling Georgia law on the issue of the burden of proving the validity of a guilty plea attacked in a collateral proceeding. The trial court declined to rule on the issue of the admissibility of Smith's pleas, allowing the parties to present briefs on this issue. During the interim, *Nash* was decided by this court. This decision, later affirmed on certiorari, authorized the trial court to admit the pleas for the purpose of recidivist sentencing.

Contrary to Smith's argument, we do not agree that the trial court's decision to continue the initial sentencing hearing worked an abridgement of Smith's due process rights. *Parke v. Raley*, supra, had been decided at the time of the initial sentencing hearing. Given the obvious differences between *Pope* and *Parke*, the state of the law on the issue was not clear at the time of the first hearing. The trial court's decision to continue that hearing was made in an effort to

allow both parties the opportunity to present further argument on an issue critical to a determination of Smith's sentence. This decision could hardly be considered an abuse of the trial court's inherent power to conduct the proceedings before it. See generally OCGA § 15-1-3.

Although we conclude that during his reconvened sentencing hearing, Smith was bound by the decision reached by this court the day before and is now bound by the Supreme Court's affirmance of that case, we must take into consideration the fact that *Nash* was initially decided only one day before the reconvened hearing. It is not clear from the record whether Smith was afforded a chance to present evidence on the issue of the validity of his pleas. Out of an abundance of caution, we therefore remand this case to the trial court to allow Smith the "opportunity to attempt to meet his burden of production at a hearing to be held consistent with this opinion." *Nash*, supra, 271 Ga. at 286. See also *Brown v. State*, 244 Ga. App. 544 (536 SE2d 253) (2000).[2] Smith's remaining arguments with respect to his sentencing hearing are rendered moot by our conclusion that he is bound by the Supreme Court's decision in *Nash*, supra.

4. Smith claims he was denied effective assistance of counsel in several respects, but he has failed to meet his burden of showing that counsel's performance was deficient or how any deficiency might have affected the outcome of his trial. See, e.g., *Allen v. State*, 271 Ga. 502-503 (2) (521 SE2d 190) (1999). His arguments concerning counsel's performance during the sentencing phase of trial are rendered moot by our holding in Division 3.

*Judgment affirmed in part and remanded in part with direction. Johnson, C. J., and Phipps, J., concur.*

DECIDED AUGUST 31, 2000

*Augustus T. Curtis*, for appellant.
*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney*, for appellee.

---

[2] We caution Smith that "[a] silent record or the mere naked assertion by an accused that his prior counseled plea was not made knowingly and intelligently is insufficient" to successfully attack any prior plea. (Citation and punctuation omitted.) *Nash*, supra, 271 Ga. at 285.