## A94A1633. WILLIAMS v. THE STATE.
(449 SE2d 532)

Sмıтн, Judge.

Richard Kevin Williams was convicted by a jury on four counts of aggravated assault, OCGA § 16-5-21 (a) (2); one count of misdemeanor criminal trespass, OCGA § 16-7-21 (a); and one count of felony obstruction of an officer, OCGA § 16-10-24 (b). He appeals following the denial of his motion for new trial.

1. Williams challenges the sufficiency of the evidence to support his convictions.

From the evidence presented at trial, the jury was authorized to believe that after being ordered out of the apartment he shared with Cynthia Gaudy and her three children, Williams was escorted from the property without incident by Cobb County police officer David Schroeder. Schroeder testified that Williams appeared to have been drinking, smelled of alcohol, and was acting irrationally.

Williams returned to the apartment the same evening, knocked on the door, and asked to speak with Gaudy. She refused to let him enter. When he insisted, she and the three children barricaded themselves in an upstairs bedroom. Williams then broke the back door open and entered the apartment. Williams threw household objects around, knocked down another bedroom door, then obtained three knives from the kitchen. While he brandished the knives, Gaudy and her daughters huddled in a closet and her son cowered on the other side of the room. Gaudy called 911, and she convinced Williams to give the knives to her daughter just as the police arrived. A neighbor, Alissa Smith, observed Williams breaking down the back door and saw him in the bedroom holding a knife.

Upon their arrival, Cobb County police officers ordered Williams away from the closet. He failed to respond, and after a struggle, they handcuffed and arrested him. Williams struggled with the police officers when they attempted to place him in the patrol car, kicking, pushing, and injuring one officer.

As he was being led out by the police, he shouted to Gaudy that he would "get her." Gaudy and her children were terrified during the incident. Gaudy was charged a total of $330 for the damage to the apartment.

This enumeration is without merit. The fact that Williams agreed to be responsible for the rent or that Gaudy's name alone was on the lease only because Williams agreed to make that change as an accomodation to Gaudy for the purpose of regaining custody of her children did not entitle him to terrorize the apartment's occupants, vandalize the property, or obstruct the officers. We have no hesitation in finding this evidence sufficient to authorize the jury to find Williams guilty of four counts of aggravated assault, one count of misdemeanor

criminal trespass, and one count of felony obstruction of an officer, under the standard enunciated in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Williams asserts error in the trial court's denial of his motion for mistrial, made on the ground that on two occasions during Gaudy's testimony his character was impermissibly placed in issue.

On direct examination, the prosecutor asked Gaudy why she requested that the apartment manager call the police earlier in the day. Before being stopped by a defense objection, Gaudy replied: "Because I know he's capable — I know Richard is capable —." In his brief, Williams refers to this as an allusion to Williams's capability of violence. However, Gaudy did not state what Richard was capable of, and never completed the sentence. The defense informed the court that it wished to make a motion, but asked the court to allow it to be made later "so we don't delay the court," and the court agreed.

The defense took no further action until a second "incident" occurred during cross-examination. Gaudy was questioned about living arrangements in the apartment, and the following colloquy took place: "Q: While you were — you and Richard were living in that apartment from July through September 24, I think your children joined you? A. Uh-huh. (Affirmative response.) Q. Where did you stay? A. In the bedroom to the right. Q. Where did Richard stay? A. Up until September 24? Q. You're under oath, Miss Gaudy. A. Richard was in jail. Q. Which bedroom did he stay in? A. In the bedroom to the right. [DEFENSE COUNSEL]: Your Honor, I would like to make a motion at this time."

Defense counsel then moved the court for a mistrial, arguing that the offending answers were not responsive to the questions and improperly injected Williams's character into the proceedings. The trial court denied the motion. The trial court offered to ascertain whether the remarks had any prejudicial effect on the jury, instruct the jury to completely remove the prejudicial information from their minds, and/or give a curative instruction. Defense counsel specifically declined this offer.

The decision whether to grant a mistrial lies within the discretion of the trial court. We must determine whether the court abused its discretion in denying the motion for mistrial, considering, among other factors, the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety. *Shropshire v. State*, 210 Ga. App. 241, 243 (2) (435 SE2d 00) (1993).

Although the trial court gave no specific reason for the denial of the motion as to the response on direct examination, it is apparent that no prejudice resulted from Gaudy's answer because the witness never finished the sentence.

With regard to the ruling on the cross-examination response, Williams had been arrested on an unrelated charge on September 25, only one day after September 24, the date Gaudy's children joined the household and the same date Gaudy asked about before responding to defense counsel's question. The trial court found that because the two dates were so close in time, Gaudy may have confused the two dates, but her answer was responsive to the question. Relying upon *Henson v. State*, 168 Ga. App. 210, 211-212 (2) (308 SE2d 555) (1983), the court ruled that defense counsel could not complain because he had taken a risk by propounding a "dangerous question" to Gaudy.

We agree with the trial court's ruling. The fact that in Gaudy's answer she gave an incorrect statement of fact does not make that answer non-responsive.[1] Defense counsel knew that because Williams had been in jail just one day after the date about which he was questioning the witness, a possibility existed that in responding to the question the witness might confuse the dates and mention Williams's arrest. Under *Henson*, supra, in these circumstances, defense counsel "will not be heard to object to the answer, no matter how prejudicial it may be, if the answer is a direct and pertinent response to the question." (Citations and punctuation omitted.) Id. at 212 (2).

Moreover, because curative instructions were offered and refused, Williams cannot now complain of the testimony. *Bromley v. State*, 259 Ga. 377, 380 (4) (380 SE2d 694) (1989). Considering all these factors and the overwhelming evidence of Williams's guilt, we find no abuse of discretion in the trial court's denial of his motion for mistrial. *Shropshire*, supra.

*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 14, 1994.

*Alice C. Stewart*, for appellant.

*Thomas J. Charron*, District Attorney, *Christina A. Craddock, Debra H. Bernes, Nancy I. Jordan*, Assistant District Attorneys, for appellee.

---

[1] We note that even when a witness's non-responsive answer impacts negatively on the defendant's character, it does not place the defendant's character in issue under OCGA § 24-9-20 (b). *Nelson v. State*, 204 Ga. App. 409, 410 (419 SE2d 502) (1992).