A94A2661. QUERY v. THE STATE.
(456 SE2d 704)

RUFFIN, Judge.

James Query was convicted of manufacturing methamphetamine and possession of methamphetamine with intent to distribute in violation of the Georgia Controlled Substances Act. He appeals from the judgment of conviction and sentence and the denial of his motion for new trial.

Viewed in a light most favorable to the verdict, the evidence shows that Query was part of a criminal enterprise which used a car repair business as a front for a drug operation engaged in the manufacture and sale of methamphetamine.

Between October 22, 1988 and May 2, 1989, at the request of a postal inspector, Douglas County Sheriff's Detective Scott Cosper and a narcotics detecting dog inspected numerous packages which were mailed to and from Query at his Douglas County address. Many of the packages were sent to and from Florida. Each time the dog detected the presence of illegal drugs. During that period, Cosper drove by Query's residence several times and observed Query and an older model black and white Camaro on the premises. Cosper had also observed Query driving a red Nissan 300 ZX.

On May 3, 1989, Cosper participated in a search by federal postal

authorities of Query's home. When Cosper arrived, Query had been handcuffed and was lying on the ground. Searching Query's bedroom, Cosper discovered a video surveillance system situated to monitor the curtilage outside the house, a "peanut brittle" like substance which smelled like methamphetamine, and objects used in the sale of drugs, including scales and mailing envelopes. Detective Wynn also participated in the search. He observed that the vents to the crawlspace in the basement were sealed shut and discovered several empty chemical bottles with the odor of methamphetamine. Wynn also noticed a camera and camera bag but found no suspected illegal substances. Another detective present during the search, Captain Wheeler, detected the odor of methamphetamine upon entering the house, saw empty muriatic acid bottles, and performed tests of the substance found on the scene. That substance tested positive for methamphetamine. The federal authorities retained the items seized and Query was arrested.

Captain Wheeler learned from a narcotics investigator in Atlanta that a woman named Melissa O'Connor would be visiting Query at the jail; that she would be driving Query's black and white Camaro; and that after leaving the jail, she would go to a bank to make a deposit in Query's account. Wheeler asked officers at the jail to notify him if O'Connor visited Query. On May 23, 1989, O'Connor visited Query, driving his black and white Camaro. Wheeler was notified, and after her visit, officers followed her to a bank where she was stopped and searched. The search produced $500 in cash, a deposit slip for Query's account and 480 grams of methamphetamine in the camera bag Detective Wynn had seen in Query's bedroom. During the impound search of the vehicle, more methamphetamine was recovered. A briefcase taken from the car contained a tag receipt for Query's Nissan 300 ZX, a letter from O'Connor to Query, a deposit receipt for funds deposited in Query's account; and a note which read: "A Courier, Davis Higgins 955-3278, get house cleaned, $6000 cash for Jake and caution Florida."

Douglas County officers conducted their own search of Query's home pursuant to a search warrant and discovered a methamphetamine lab hidden in the attic stocked with items used in the manufacture of methamphetamine, including various chemicals, a microwave oven, burners, laboratory glassware and a coffee pot. Three of Query's fingerprints were discovered on a glass funnel from the lab. Officers also searched a storage bin in a mini-warehouse rented by Query where they found chemicals, laboratory glassware and other equipment used to produce methamphetamine. Approximately 875 grams of methamphetamine were seized by Douglas County officers.

Invoices from Query's auto repair business, the "Car Doctor," indicated Query billed O'Connor, referred to as his wife, and another woman, identified as his "soul mate," numerous times for car repairs.

Other invoices showed Query performed repeated repairs after the date he went to jail. Captain Wheeler expressed his opinion as a narcotics investigator that this practice of billing was consistent with money laundering.

The court admitted evidence regarding Query's 1983 federal conviction of distribution of methamphetamine as well as evidence of his guilty pleas to distribution of methamphetamine in connection with the federal case based on the May 3, 1989 seizure at his residence.

1. In his first enumeration of error, Query contends the evidence was insufficient to support the convictions because there was no evidence that he possessed methamphetamine and the State failed to prove a crime occurred within the statute of limitation. We disagree.

The indictment charged that Query was engaged in the possession and manufacture of methamphetamine between January 1, 1988 and May 23, 1989. Query's trial commenced on December 11, 1989, and ended on December 14, 1989. There was ample evidence that Query committed both offenses of which he was convicted within the statute of limitation (OCGA §§ 16-13-31 (e) (3); 17-3-1 (c)), the evidence was sufficient to enable a rational trier of fact to find Query guilty of both offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Allen v. State*, 208 Ga. App. 854 (1) (432 SE2d 600) (1993).

2. Query contends his character was impermissibly placed in issue by Captain Wheeler's testimony that he had arrested co-defendant, David Higgins, "twice for methamphetamine." Any error in the admission of this testimony was harmless error as Query subsequently elicited like testimony from the witness. See *Osborne v. State*, 193 Ga. App. 276 (6) (387 SE2d 383) (1989).

3. Query contends his character was also impermissibly placed in issue by testimony which linked him with a drug dealer. The record shows that Captain Wheeler discovered Clarence Jenkins' fishing license in Query's warehouse bin. Query objected to Wheeler's testimony that he had arrested Jenkins twice that year for solicitation of methamphetamine and possession of methamphetamine. Although the fishing license was proper res gestae evidence and the State was attempting to prove that Query was a part of a methamphetamine manufacturing enterprise, there was no evidence that Jenkins was a part of the organization. However, "[a]pplying the high probability test for harmless error, [cit.], to the entire circumstances before us, we find that assuming error did occur, it was harmless. There exists a 'high probability' that this alleged error did *not* contribute to the jury's verdict of guilty as to any of the counts of which appellant was convicted." *Lance v. State*, 191 Ga. App. 701, 704 (4) (382 SE2d 726) (1989). This is particularly true in light of the fact that the fishing license was discovered in Query's storage bin among items used in the

production of methamphetamine.

4. Query enumerates as error the court's failure to take corrective action or grant a mistrial after Captain Wheeler volunteered the following testimony: "There's too many good cases that you can make; too many dealers like James Query that you can make a case on to use bad information." However, the record demonstrates that the testimony was not volunteered but in response to Query's attorney's question on cross-examination. The statement was made following a series of questions regarding Wheeler's use of informants. "The ground here complaining of the admission of certain testimony of a witness for the State is without merit, since the ground discloses that the testimony was elicited from the witness on cross-examination by counsel for the *movant*. Where counsel on the cross-examination of a witness takes a chance by propounding a dangerous question, he will not be heard to object to the answer, no matter how prejudicial it may be, if the answer is a direct and pertinent response to the question. (Cits.) [Cit.] Since the answer here was responsive to the question propounded by appellant's counsel, the trial court did not err in denying appellant's motion for mistrial on this ground. [Cits.]" (Punctuation omitted.) *Henson v. State*, 168 Ga. App. 210, 212 (2) (308 SE2d 555) (1983).

5. In two enumerations, Query contends that the trial court erred in admitting evidence regarding the federal charges for possession of cocaine and methamphetamine with intent to distribute, including the transcripts of Query's guilty pleas to those charges. Query argues that the State failed to have a pretrial hearing and make the requisite showings for similar transaction evidence as required under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). This enumeration is entirely without merit.

The record very clearly demonstrates that a pretrial hearing was held on the admissibility of the federal charges. The record is equally clear that the State specifically argued that these charges were not similar transactions, but rather, res gestae evidence that was "intertwined" with the instant case. Moreover, after the State's argument, Query's attorney stated that he agreed that the federal charges were not similar acts or transactions and objected only that the proffered evidence would improperly place Query's character in evidence. When the State introduced copies of the federal indictments at trial, Query's attorney made no objection other than to state that he had "already objected to the entry of any evidence regarding this case." Thus, the evidence at issue was neither offered as a similar transaction nor objected to on those grounds and Query has preserved nothing for appellate review on this issue. See, e.g., *Woods v. State*, 212 Ga. App. 544 (1) (442 SE2d 22) (1994).

6. Query contends the court erred and failed to afford him due

process of law in denying his motion to reopen the record to allow his trial counsel to testify as to his claim of ineffective assistance of counsel or, alternatively, to supplement the record. The record shows that Query was afforded a hearing on his claim of ineffective assistance of counsel but declined to call trial counsel to testify and opted instead to testify on his own behalf. " 'It is well settled that the reopening of the evidence is within the sound discretion of the trial court. That decision will not be disturbed absent an abuse of discretion. (Cits.)' [Cit.]" *Oswell v. State*, 208 Ga. App. 883, 884 (2) (432 SE2d 586) (1993). We find no such abuse of discretion.

7. Query contends he was denied his Sixth Amendment right to effective assistance of counsel. However, Query's "trial counsel were not heard on this issue at the motion for new trial hearing, and for this reason, we decline to address the merits of this enumeration of error. [Cits.]" *Williams v. State*, 251 Ga. 749, 809 (20) (312 SE2d 40) (1983).

8. Query contends the court erred in sentencing him to two life terms under OCGA § 16-13-30 (d) in that he had not been previously convicted of violating a Georgia narcotics law. The State concedes that a life sentence under OCGA § 16-13-30 (d) may only be imposed for a second violation of the Georgia Controlled Substances Act, and we decline to find otherwise, despite the State's urging.

The prior offense used against Query was his 1983 federal methamphetamine conviction; thus, the life sentences were not authorized by law. They must be reversed, and the case is remanded to the trial court for resentencing. *Taylor v. State*, 186 Ga. App. 113 (3) (366 SE2d 422) (1988).

*Judgment of conviction affirmed, sentence reversed, and case remanded for resentencing. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995 — ▮▮▮▮▮▮▮

*Jill L. Anderson, Elizabeth A. Geoffroy*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.