A96A0336. NIZER v. THE STATE.
(471 SE2d 254)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with four counts of aggravated assault. His pretrial motion to suppress a custodial statement was denied after a *Jackson-Denno* (*Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908)) hearing. The evidence introduced at that hearing revealed the following: Defendant entered an auto parts store just after opening. He pointed a handgun at Johnny Barefoot,

the manager, and also at Jacqueline Bailey, an employee. When defendant discovered that there was very little money in the cash drawer, he shot the manager, who sustained a very serious head injury. Defendant then fled into nearby woods, shedding a green Celtics jacket. Officers F. M. Becker and J. M. Eisner of the DeKalb County Police Department brought one trained canine, a "Belgian Malinois, . . . about 70 pounds," which alerted to the defendant, hiding in a dried-up creek. "The dog was on a 30-foot lead[, and defendant was] another 30 feet [away]. . . ." Officer Becker told defendant "get down on all fours and to come to my location, [whereupon Officer Becker] secured the dog, [and] told [defendant] to stand up." Officer Becker "first advised [defendant] that the dog was a biting dog. And [he] advised [defendant], warned him that if he made an aggressive attempt towards me or attempted to flee, that the dog was an apprehension dog." Officer Becker denied threatening defendant with the dog, other than giving these warnings. Officer Becker's weapon "was holstered." Officer Becker had no further conversation with defendant until "after Officer Eisner had come and handcuffed him, [when Officer Becker] asked the suspect where the gun was, and [defendant] said that it was with his jacket." No *Miranda* (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) warnings had been given at this point. Officer Becker clarified, "I told him that I couldn't locate the weapon. He said he would take us to the weapon." Defendant told the police, "he had run across the front of where the entrance was to the storage bin and that he had thrown the weapon in the kudzu that was located on the right side." However, neither the police dog nor a team of police officers equipped with a metal detector was successful in locating the weapon. Officer Eisner affirmed that he did not give defendant any *Miranda* warnings. At police headquarters, defendant was read his rights by Detective Mark Anglin, in the presence of Detective Hunt. Defendant waived his rights in writing, "at which time [defendant] made a statement to [Detective Hunt]."

According to defendant, after he had been handcuffed at the scene by Officer Eisner, Officer "Becker questioned me about a weapon, at which time I told him I knew nothing about. And then I was led away to a police car." After defendant again denied knowing anything about a weapon or the shooting, Officer Becker "told me either I was going to help him find the weapon and we do this as quickly as possible, or he would have the officers uncuff me and let the dog capture me. . . . The officers started to uncuff me and then I said, Okay, Okay, I'll talk. And that's when I told him that the gun was located somewhere near the jacket in the clothes that they had found." Defendant affirmed that he had "a fear of injury at that time [and that he felt] threatened [and] coerced to attempt to help them

locate the gun."

Once advised of his rights at the police station, defendant was "asked about [any] statement[, and he] said, No, I'll wait on an attorney. The Detective Hunt and the other detective were then proceeding to leave out the door. And then [defendant] said, Well, that's all right, I've already made enough statements to incriminate myself, I might as well go ahead and finish out." Defendant "fully confessed to having pulled the trigger and shot Mr. Barefoot. He said he did not intend to do so, that he intended to commit an armed robbery and not hurt anybody, leave them in the closet and escape. . . ." Defendant has "completed high school and . . . started about a year and . . . a quarter of college." He described the detectives as "quite hospitable," who gave him a soft drink. Defendant affirmed that he understood his rights and never sought to stop the interview; that the officers did not have their weapons drawn; and that they did not promise him any reward for making his statement nor threaten him if he did not make such statement. The shooting occurred at 11:10 a.m., and defendant gave his statement less than one hour later, at 12:01 p.m.

The trial court denied defendant's motion to suppress, concluding "as a matter of fact that the confession was voluntarily given." After a bench trial, defendant was found guilty of two counts of assault with intent to rob, committed against Johnny Barefoot and Jacqueline Bailey, respectively. This direct appeal followed. *Held*:

In his sole enumeration of error, defendant contends the trial court erred in "admitting [his] statement to police into evidence because it was the fruit of the statement which was obtained in violation of the defendant's Fifth Amendment right not to be forced to incriminate himself."

The question of whether a post-*Miranda* custodial statement is admissible depends on whether, under the totality of the circumstances, there was a knowing and voluntary waiver of rights. *Reinhardt v. State*, 263 Ga. 113, 114 (3), 115 (3) (b) (428 SE2d 333). " 'Factual and credibility determinations of this sort made by a trial judge after a (voluntariness) hearing must be accepted by appellate courts unless such determinations are clearly erroneous. (Cits.)' *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974)." *Wilson v. State*, 211 Ga. App. 457 (1), 458 (439 SE2d 685). In the case sub judice, the trial court did not believe that defendant was threatened with having the police dog set upon him if he did not help locate the weapon, which was never found. Such credibility determinations are within the province of the trial court. *Nesbitt v. State*, 215 Ga. App. 271, 272 (3), 273 (450 SE2d 310). The determination that, under the totality of the circumstances, defendant's post-*Miranda* custodial statement was knowing and voluntary and was not coerced or tainted by the previous pre-*Miranda* custodial interrogation regarding the location of the

gun, is supported by evidence and is not, therefore, clearly erroneous. *Reinhardt v. State*, 263 Ga. 113, 114 (3), 115 (3) (b), supra.

*Judgment affirmed. Johnson, J., concurs. Ruffin, J., concurs in the judgment only.*

DECIDED MAY 6, 1996.

*Hartley & Puls, Alton G. Hartley*, for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Niria L. Dominguez, Assistant District Attorneys*, for appellee.