A98A0316. NASH v. THE STATE.
(503 SE2d 23)

BEASLEY, Judge.

Nash was convicted in 1996 of aggravated assault on Iris Johnson for assaulting her with a knife when he became enraged with Johnson during a visit to her mother's home. OCGA § 16-5-21.

1. Nash contends the court erred in admitting testimony concerning several threatening telephone calls allegedly made by him to the victim's mother in that insufficient evidence to prove he made the calls resulted in the absence of a proper foundation for this testimony.

Inasmuch as Nash conceded at trial that a proper foundation

had been laid and then objected to it on grounds that its prejudicial effect outweighed its probative value, the foundation issue has not been preserved for appellate review.[1] Regardless, there was ample evidence identifying Nash as the caller.

2. Nash enumerates as error the trial court's consideration, in aggravation of punishment, of his 1991 conviction based on a guilty plea to a felony and two misdemeanors.

At sentencing, the prosecuting attorney submitted a certified copy of the conviction for felony obstruction, terroristic threats, and criminal damage to property. The purpose was to warrant recidivist punishment under OCGA § 17-10-7 (a). He urged that under the statute, the court was required to give Nash the maximum 20-year sentence for aggravated assault, although any part could be probated. Accordingly, the court imposed the maximum 20-year sentence, with the last 12 years probated.

When Nash challenged the voluntariness of the guilty plea, the State was unable to produce a transcript of the plea proceeding. Evidence did show that Nash's guilty plea hearing was reported but not transcribed.

To fill the void, the State submitted the testimony of the attorney who had prosecuted the case. Although he had no independent recollection of Nash's plea, he testified that he was certain and had "no doubt whatsoever" that the plea was knowingly and voluntarily entered because in every case it was his practice, as well as that of the presiding judge, both to inform the defendants of all the rights they were waiving and the consequences of their pleas and to ensure that the pleas were knowingly and voluntarily entered. He explained the procedure used and the rights articulated.

Defendant offered no evidence whatsoever to rebut this or to show he did not enter a proper plea. Following argument, the court found that the State had proved a valid plea and ruled that the conviction could be considered in arriving at a sentence.

Nash's position is squarely seated on the requirements established by the United States Supreme Court in *Boykin v. Alabama*.[2] The Court held that federal constitutional due process requires that after a defendant raises the question of the validity of his plea of guilty, the burden is on the State to affirmatively show that the plea was intelligently and voluntarily entered. It may be accomplished by one of two means: (1) the record of the plea shows the prisoner was aware of the rights he was waiving and the consequences of the plea; and (2) extrinsic evidence shows the same.[3]

---

[1] See *Brantley v. State*, 177 Ga. App. 13, 14 (1) (338 SE2d 694) (1985).

[2] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

[3] *Beck v. State*, 222 Ga. App. 168 (473 SE2d 263) (1996), and cits. This is a judicially

*Boykin* involved direct review of a conviction allegedly based on an uninformed guilty plea. In 1992 the United States Supreme Court had before it a case similar to Nash's, *Parke v. Raley*,[4] in that both challenged their state court's use of prior guilty pleas so as to impose persistent offender sentences. The issue was whether due process imposed the same burden of proof on the State when a prior guilty plea is offered to enhance a sentence pursuant to a recidivist statute. The Court distinguished this situation from *Boykin*, pointing out that Raley "never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin*'s presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights. [Cit.]"[5]

The Court reasoned further that on collateral review, "it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained."[6] Consequently, it held, "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under *Boykin*."[7]

The trial court in Nash's case did place the burden on the State, and the State accepted it, presumably on the authority of *Boykin*. Clearly there was no recognition of *Parke*. In any event, the State's proof of validity was not assailed by Nash, much less undermined, other than by objection to its sufficiency, and Nash was not deprived of the right upon which he stands. He had an opportunity to present contrary evidence and did not do so, counting instead on the absence of a guilty plea transcript and what he considered to be deficient extrinsic evidence. He, too, missed *Parke*.

On appeal, Nash still ignores that controlling authority. All of the cases he relies on are bottomed on *Boykin*. Some, like *Gadson v.*

---

fashioned Georgia rule of evidence methodology. See *Roberts v. Greenway*, 233 Ga. 473, 475 (1) (211 SE2d 764) (1975). *Boykin* focuses on the contemporaneous record method but impliedly does not preclude the extrinsic method. Id. at 244.

[4] 506 U. S. 20 (113 SC 517, 121 LE2d 391) (1992).
[5] Id. at 29.
[6] Id. at 30.
[7] Id. at 34.

*State,*[8] *Gadson v. State* again,[9] and *Pope v. State,*[10] are pre-*Parke* collateral attacks on sentence enhancement use, as Nash has undertaken.[11] Although *Miller v. State*[12] is also such a case but is post-*Parke*, it fails to take *Parke* into account and erroneously considered the burden to be on the State to prove the sentence-enhancing plea's validity per *Boykin*, without the presumption of regularity. No harm was done because the State showed the plea was valid.

Other cases which Nash cites, like *State v. Germany,*[13] *Johnson v. State,*[14] *Spurgeon v. State,*[15] *Bowens v. State,*[16] *Lopez v. State,*[17] and *Parks v. State*[18] are direct appeals and thus properly apply *Boykin.*[19]

Nash also presents two habeas corpus cases, *Bowers v. Moore*[20] and *Roberts v. Greenway,*[21] which *Bowers* follows. Both of these cases impose *Boykin*'s burden of proof requirement on the State when the plea is challenged by a prisoner in a habeas corpus proceeding. Although *Bowers* (but not *Roberts*) was decided several years after *Parke*, the Supreme Court of Georgia did not discuss it even though the issue arose in a habeas corpus setting as it did in *Parke*.

Parke was a Kentucky warden against whom Raley brought a federal habeas corpus action after the state trial court, and the state appellate court on direct appeal, rejected his contention that his prior guilty pleas should have been suppressed in sentencing. His reasoning was that they were invalid under *Boykin* in that the records did not contain transcripts of the plea proceedings and thus did not affirmatively show the pleas were knowing and voluntary.

*Bowers* differs from *Parke* only in that the collateral nature of the attack is solely by way of the habeas corpus proceeding itself, whereas Raley's primary collateral attack was his motion to suppress evidence of the guilty plea for sentence enhancement; it was the state courts' rejection of his position that led to the habeas corpus proceeding, which itself was a collateral attack. Nevertheless, in *Parke*, the

---

[8] 197 Ga. App. 315 (398 SE2d 409) (1990).

[9] 202 Ga. App. 417 (414 SE2d 332) (1992) (same *Gadson*, on second appeal following resentencing).

[10] 256 Ga. 195, 209 (17) (345 SE2d 831) (1986).

[11] Although the second *Gadson* appeal was decided the same year as *Parke*, the Court of Appeals of Georgia decided *Gadson* in January and the United States Supreme Court decided *Parke* the following December.

[12] 214 Ga. App. 393, 394 (2) (448 SE2d 20) (1994).

[13] 245 Ga. 326 (265 SE2d 13) (1980).

[14] 227 Ga. App. 390 (1) (489 SE2d 138) (1997).

[15] 214 Ga. App. 227 (447 SE2d 164) (1994).

[16] 194 Ga. App. 391 (2) (390 SE2d 634) (1990).

[17] 207 Ga. App. 554 (1) (428 SE2d 448) (1993).

[18] 223 Ga. App. 694 (479 SE2d 3) (1996).

[19] The Supreme Court of Georgia anticipated the problem of proof for later collateral proceedings in *Germany*.

[20] 266 Ga. 893 (471 SE2d 869) (1996).

[21] 233 Ga. at 475 (1).

United States Supreme Court discussed habeas corpus challenges of guilty pleas in the same vein as efforts to undermine guilty pleas to heighten sentence. Both are collateral attacks in which the presumption of regularity applies and due process does not require a presumption of invalidity.[22]

*Bowers* is bottomed on *Boykin* and not on state grounds (such as the due process provision of the Georgia Bill of Rights). Consequently it does not govern disposition of Nash's case; *Parke* does.

The trial court did not deprive Nash of due process of law, as protected by the Fourteenth Amendment, by admitting in evidence his prior guilty plea so as to make him eligible for a recidivist sentence. The court was authorized to, but did not, apply the presumption of regularity which is "deeply rooted in our [American] jurisprudence"[23] and in Georgia is codified in OCGA § 24-4-24 (b) (1).[24] The plea was shown to represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant."[25]

Nash has presented neither in the trial nor here any independent state ground, either by way of state constitutional basis, statute, or common law. OCGA § 17-10-7, the statute which calls for enhanced punishment for repeaters and constituted the authority for his sentence, does not provide otherwise.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 26, 1998 —
RECONSIDERATION DENIED JUNE 24, 1998 — 

*Pete, Pete & Associates, Anthony T. Pete*, for appellant.
*Harry N. Gordon, District Attorney, James D. Love, Assistant District Attorney*, for appellee.

---

[22] *Parke*, 506 U. S. at 29-30.
[23] Id. at 20.
[24] See also *Touchton v. Stewart*, 229 Ga. 303 (190 SE2d 912) (1972).
[25] *North Carolina v. Alford*, 400 U. S. 25, 31 (91 SC 160, 27 LE2d 162) (1970).