## A98A1670. RUTLEDGE v. THE STATE.

(515 SE2d 1)

RUFFIN, Judge.

A jury found Bobby Rutledge guilty of armed robbery and possession of a knife during the commission of a crime. Pursuant to OCGA § 17-10-7 (b) (2), the trial court sentenced Rutledge to life imprisonment without parole on the first count and five years on the second count, to be served consecutively. Rutledge appeals, asserting numerous grounds. For reasons which follow, we affirm.

1. Rutledge first challenges the trial court's denial of his motion for directed verdict based upon the insufficiency of the evidence.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt.

(Citations and punctuation omitted.) *Cantrell v. State*, 230 Ga. App. 693, 694-695 (1) (498 SE2d 90) (1998).

> [O]n an appeal following a conviction, the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this Court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility.

(Punctuation omitted.) *Webb v. State*, 228 Ga. App. 624, 625 (2) (492 SE2d 312) (1997); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in a light most favorable to the verdict, the evidence demonstrates that on January 26, 1997, a man wearing a tan, fleece-lined coat and a dark cap entered a BP Station in Warner Robins, approached the cashier, April Kroger, and asked for a pack of cigarettes. As Kroger reached for the cigarettes, the man came toward her with an "unfolded" knife and told her "not to try anything." He took money from the cash register and left the store. As the man fled, Kroger noticed that he ran with a limp. The in-store security camera captured the crime on film, and a composite of still photographs from the tape was introduced into evidence.

Rutledge's sister, Celestine Brown, testified that the day before the crime was committed, she had given Rutledge "a brown jacket with some white in the collar" and a black hood. Although the quality of the videotape from the in-store camera was poor, Brown was able to identify the man in the pictures as her brother, based upon his

clothing and a partial view of his face. Brown further acknowledged that on the night of January 26, her brother showed up at her house with approximately $500 in cash and told her he had taken something that did not belong to him.

Rutledge's cousin, Dolly Turner, testified that a nervous Rutledge came to her house the evening of January 26 wearing a brown jacket and a black hood. Rutledge gave Turner the coat and hood and a knife and asked her to throw them in the trash. Turner threw away the knife, but she kept the coat and the hood until she handed them over to the police. Kroger testified that the coat Turner gave to the police was the same coat worn by the person who had robbed her at knifepoint.

After meeting with Rutledge, Officer McSwain, who investigated the crime, confirmed that Rutledge, like the perpetrator, walked with a limp.

Despite ample evidence linking him to the crime, Rutledge argues that this is a case of mistaken identification. To support his position, he points to conflicts in the evidence, including (1) Kroger's equivocation in identifying him from the "mug books"; (2) a dispute regarding the amount of money taken from the gas station; and (3) the type of knife used in the robbery. However, it is the function of the jury to resolve conflicts in the evidence. *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997). Since there was ample evidence from which the jury could have concluded that it was Rutledge who committed the robbery through the use of a knife, "[w]e . . . conclude that the evidence, construed in a light most favorable to support the verdict, was sufficient to authorize a rational trier of fact to find [Rutledge] guilty beyond a reasonable doubt of both offenses. [See OCGA §§ 16-8-41 and 16-11-106.]" *Abrams v. State*, 229 Ga. App. 152, 154 (3) (493 SE2d 561) (1997).

2. Rutledge asserts that his motion for new trial should have been granted because his trial counsel was ineffective. After conducting a hearing on the issue, the trial court concluded that Rutledge received effective assistance of counsel at trial. "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous." (Punctuation omitted.) *Hassan v. State*, 231 Ga. App. 783, 784 (1) (500 SE2d 644) (1998).

To establish a claim of ineffective assistance of counsel, Rutledge

> must show that his counsel's performance was deficient and that the deficient performance was prejudicial to his defense. To meet the first prong of this test, a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional

conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires the defendant to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different.

(Citations and punctuation omitted.) *Brown v. State*, 268 Ga. 354, 357 (4) (490 SE2d 75) (1997). Here, the trial court was authorized to find that Rutledge received effective assistance of counsel at trial.

Rutledge contends that his attorney failed to call certain witnesses, did not confer with him regarding jury selection, and failed to question a witness about another possible suspect. However, all of Rutledge's "claims of ineffectiveness are grounded in matters of trial tactics and strategy and do not provide a basis for finding counsel lacking. Such tactical decisions do not equate with ineffective assistance of counsel." *Harper v. State*, 232 Ga. App. 224, 227 (2) (d) (501 SE2d 591) (1998). Contrary to Rutledge's contentions, his attorney testified that he did confer with his client about the case and that the decision not to call witnesses was made because the witnesses either knew nothing about the case or could not be located. In addition, the attorney testified that he and his client discussed several individuals on the jury panel during the selection process. Accordingly, the trial court's finding that Rutledge was afforded effective assistance of counsel was not clearly erroneous. See *Sewell v. State*, 229 Ga. App. 685, 687 (1) (494 SE2d 512) (1997) (which witnesses to call, whether and how to conduct cross-examination, and what jurors to accept or strike constitute the exclusive province of the attorney after consultation with his client).

3. In two enumerations of error, Rutledge contends the trial court erred by allowing into evidence the photographic lineup and by permitting Kroger to identify him in court. However, Rutledge waived these objections since he failed to object during the trial either to the introduction of the lineup or to Kroger's in-court identification. See *Brewer v. State*, 219 Ga. App. 16, 18 (2) (463 SE2d 906) (1995); *Slaughter v. State*, 217 Ga. App. 449, 450 (1) (459 SE2d 168) (1995).

4. Rutledge also complains that the trial court erred in admitting into evidence his statement to Officer McSwain because it was taken after he had invoked his right to an attorney. In addition, Rutledge suggests that he was under the influence of drugs at the time the statement was taken and, as such, the statement was not voluntary. We note at the outset that "[t]he trial court's findings as to factual

determinations and credibility relating to the admission of in-custody statements will be upheld where . . . they are not clearly erroneous." *Barrs v. State*, 202 Ga. App. 520, 521 (3) (414 SE2d 733) (1992).

At the *Jackson-Denno* hearing, McSwain testified that Rutledge's statements were made after he was read his *Miranda* rights. At trial, McSwain testified that he did *not* question Rutledge after he invoked his right to an attorney. In addition, McSwain stated that when he took the statement, Rutledge did not appear to be intoxicated or under the influence of any drugs. Based on this testimony, the trial court concluded that Rutledge's statement was freely and voluntarily given and admitted the statement for the limited purpose of impeaching the defendant to the extent he contradicted himself on the stand. Under these circumstances, we cannot say that the trial court's decision was clearly erroneous. See *Barrs*, supra.

5. Rutledge contends the trial court erred by refusing the jury's request during deliberations to have read the testimony of Tawana Davis, a witness who supported his defense of mistaken identification. Rutledge asserts that he was treated unfairly, since the trial court acquiesced to the jury's request to have read a portion of the testimony of one of the police officers.

"The rule in this state is that the trial judge, in his discretion, may permit the jury at their request to rehear in the defendant's presence the requested testimony after beginning deliberation." *Johns v. State*, 239 Ga. 681, 683 (2) (238 SE2d 372) (1977). Likewise, "[t]he court may also, in its discretion, refuse such a request." *Byrd v. State*, 237 Ga. 781, 783 (1) (229 SE2d 631) (1976). "Of course, jury requests should not be arbitrarily or capriciously denied." *Williams v. State*, 205 Ga. App. 445, 446 (2) (422 SE2d 309) (1992).

In this case, the trial court agreed to the jury's request to have read a limited portion of the police officer's testimony. Shortly thereafter, the jury requested to have *all* of Davis' testimony read. Although the judge refused this request, he advised the jurors that if they could point to a specific portion of Davis' testimony, he would reconsider. The jurors never provided a specific portion of Davis' testimony that they wanted to hear. Under these circumstances, the trial court did not abuse its discretion in refusing to read back all of Davis' testimony. See *Haynes v. State*, 180 Ga. App. 202 (1) (349 SE2d 208) (1986).

6. Rutledge asserts that the trial court erred by failing to remove a juror who had perjured himself during voir dire. This contention is without merit. During the trial, Rutledge's attorney informed the trial court that he had represented one of the jurors in two prior cases — one involving the violation of a city ordinance and another involving a juvenile offense. The juror did not mention these matters during voir dire, although potential jurors had been asked about

criminal histories. However, Rutledge's attorney never requested that the juror be removed either during voir dire or afterwards. To the contrary, the attorney testified that he did not seek to remove the juror because he "thought he would vote for [him]. [He] figured the [juror] would give [him] the benefit of the doubt."

Since Rutledge failed to object to the juror remaining on the panel, he is precluded from raising this issue on appeal. See *Grogan v. State*, 230 Ga. App. 876 (497 SE2d 589) (1998). " 'A party cannot ignore what he thinks to be error, take his chance on a favorable verdict, and complain on appeal.' " Id. at 877.

7. Rutledge contends the trial court erred by sentencing him to life without parole under the recidivist statute, OCGA § 17-10-7 (b) (2), based upon a certified copy of his 1975 guilty plea for burglary and armed robbery. Rutledge objected below to the use of the prior conviction, arguing that the plea was not voluntarily made. Although no transcript of the plea hearing was offered into evidence, the trial court rejected Rutledge's objection and admitted the conviction. Rutledge now argues that the State failed to prove the voluntariness of the plea.

In *Pope v. State*, 256 Ga. 195 (345 SE2d 831) (1986), our Supreme Court held that

> [a] plea of guilty that is invalid under *Boykin* [*v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969)] may not be used to enhance punishment in a subsequent trial. . . . [O]nce the defendant raises the issue of intelligent and voluntary waiver with respect to prior guilty pleas, the burden is on the state to establish a valid waiver. *Boykin* states that "(p)resuming waiver from a silent record is impermissible." Id. at 242.

Id. at 209-210 (17).

After the decision in *Pope*, however, the United States Supreme Court clarified its holding in *Boykin*, stating that "*Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Parke v. Raley*, 506 U. S. 20, 30 (113 SC 517, 121 LE2d 391) (1992). Thus, the U. S. Supreme Court held that "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under *Boykin*." Id. at 34.

In *Nash v. State*, 233 Ga. App. 75 (503 SE2d 23) (1998), cert. granted, this Court considered the effect of *Parke* on the Supreme Court of Georgia's decision in *Pope*. Because *Pope* was based on an interpretation of the United States Constitution, and the U. S.

Supreme Court had subsequently interpreted the Constitution in a different manner, a unanimous Court of Appeals held that *Parke* was controlling, and that, when considering the admissibility of a prior guilty plea for purposes of recidivist sentencing, a trial court is "authorized to . . . apply the presumption of regularity which is deeply rooted in our American jurisprudence and in Georgia is codified in OCGA § 24-4-24 (b) (1)." (Punctuation and footnote omitted.) *Nash*, supra at 79.[1]

In this case, despite Rutledge's testimony to the contrary, the trial court found that Rutledge was represented by an attorney when he pled guilty. This is supported by the fact that the conviction was signed by Rutledge's attorney. Rutledge admitted that, when he signed the guilty plea, he understood that he was admitting to having committed the crimes with which he had been charged. Although the State did not introduce a transcript of the plea, the trial court was entitled to rely on a presumption of regularity and to conclude that Rutledge's testimony was not sufficiently credible to overcome that presumption. Accordingly, this enumeration is without merit.

8. Next Rutledge asserts that the trial court erred by allowing the State to introduce evidence that two of its own witnesses had been compelled to testify. However, by failing to object to the introduction of this evidence at trial, Rutledge has waived his right to appellate review. "Matters not objected to at trial cannot be raised for the first time on appeal." (Punctuation omitted.) *Richards v. State*, 232 Ga. App. 584, 586-587 (1) (502 SE2d 519) (1998).

9. Rutledge maintains that the trial court erred by allowing the State to impeach him on a collateral matter. "While a witness may be impeached on a collateral issue which is indirectly material to the issue in the case, a witness may not be impeached because of a discrepancy as to a wholly immaterial matter." (Punctuation omitted.) *Cook v. State*, 221 Ga. App. 831, 834 (4) (472 SE2d 686) (1996).

During the trial, Rutledge testified that on the evening of January 26, he had gone to a hospital in Macon, but was refused entry. To refute this testimony, the State called the custodian of records for the hospital to determine if there was any record of Rutledge's having sought treatment on January 26. Clearly, testimony regarding Rutledge's whereabouts on January 26 is material to the issue of his guilt. Consequently, the trial court did not abuse its discretion in

---

[1] Although the Supreme Court's decision in *Mize v. State*, 269 Ga. 646, 657 (15) (501 SE2d 219) (1998), implicitly calls into question our decision in *Nash*, the Supreme Court did not overrule *Nash* in that case, nor did it consider the U. S. Supreme Court's decision in *Parke*. Accordingly, and in light of the fact that the Supreme Court has granted certiorari in *Nash*, we adhere to our unanimous decision in *Nash*. See OCGA § 15-3-1 (unanimous whole-court decision may not be "overruled or materially modified except with the concurrence of all the Judges").

allowing the State to impeach Rutledge on this issue.

10. In his final enumeration of error, Rutledge contends that the trial court erred by refusing to allow him to question Officer McSwain regarding another possible suspect. We note that "[q]uestions of the relevancy of evidence are within the trial court's discretion; the right of cross-examination is not abridged where the examination is limited by the trial court to relevant matters by proper questioning." *Nichols v. State*, 210 Ga. App. 134, 137-138 (5) (435 SE2d 502) (1993).

In this case, Rutledge wanted to ask McSwain about a man named Johnson who had robbed the same BP station that Rutledge was charged with robbing. The trial court questioned McSwain outside the presence of the jury and heard evidence that Johnson was significantly younger than Kroger's attacker and did not walk with a limp. Since Rutledge and Johnson did not resemble each other, the trial court concluded that allowing Rutledge to question McSwain about Johnson would establish only that the BP station had been robbed before. Accordingly, the trial court excluded the testimony. Under these circumstances, the trial court did not abuse its discretion in refusing to allow Rutledge to question McSwain about Johnson.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 15, 1999 —
RECONSIDERATION DENIED MARCH 31, 1999 — 

*Sonya C. Popken*, for appellant.
*Kelly R. Burke, District Attorney, A. James Rockefeller, Assistant District Attorney*, for appellee.