## A98A2057. WELLS v. THE STATE.
(514 SE2d 245)

RUFFIN, Judge.

A jury found Wells guilty of possession with intent to distribute cocaine and possession of marijuana. The trial court sentenced Wells to life for possession with intent to distribute cocaine and to 12 months for possession of marijuana. Wells appeals, asserting numerous errors. Because Wells' assertions lack merit, we affirm.

On November 23, 1993, following a "controlled buy" of crack cocaine at a motel room, six to eight members of the Gwinnett County Drug Task Force obtained a search warrant for the motel room. Detective Diaz testified that, while waiting to execute the warrant, he saw Wells and a young female leave the room and get into a car, with Wells sitting in the driver's seat.

To prevent Wells from leaving, the police officers blocked his car. Diaz handed Wells a copy of the search warrant and took him back to the motel room where the police found marijuana, two sets of scales, multiple small ziplock baggies, and a razor blade. Diaz testified that the plastic bags, scales and razor blade are all instruments typically used in the distribution of cocaine.

While Diaz was in the motel room with Wells, another officer told Diaz that he had found something in Wells' car. Diaz returned to the car where he saw, underneath the steering wheel on the floor of the car, two clear plastic packets containing crack cocaine. After Diaz read Wells his *Miranda* rights, Wells told Diaz that he was taking the crack cocaine to someone else. Wells also told Diaz that the mari-

juana was for his personal use.

1. At trial, Wells moved to obtain a copy of his female companion's juvenile court record, which, according to Wells, contained exculpatory information.[1] Wells contends that, pursuant to *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), he was entitled to any evidence regarding the disposition of the case against his companion. Specifically, Wells argues that if his companion had been adjudicated delinquent based upon the contraband found, the jury could infer that the drugs were hers rather than his. Following an in-camera inspection, the trial court found that the juvenile record contained no exculpatory information. Wells claims the trial court erred in this finding.

> Fundamental to any error based upon a violation of *Brady* is that appellant must prove that: (1) the state possessed evidence favorable to the defense, i.e., true *Brady* material; (2) the defense did not possess the evidence, nor could [he] obtain it [himself] with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; (4) [he] was denied access to such evidence during the trial; (5) the disclosure would have benefitted the defense by providing evidence for the defense or impeaching prior inconsistent statements; and (6) the denial deprived [him] of a fair trial, i.e, a reasonable probability exists that the outcome of the proceedings would have been different had disclosure been made.

(Emphasis omitted.) *Bailey v. State,* 229 Ga. App. 869, 874 (3) (494 SE2d 672) (1997). Here, Wells' asserted error must fail because he has not proved that the State possessed any evidence favorable to his defense.

Wells claims that this is an "equal access" case and, as such, evidence of his companion's guilt would exculpate him. We disagree. "The equal access rule applies to contraband that is for the most part in open, notorious and easily accessible areas." (Punctuation omitted.) *Felix v. State,* 234 Ga. App. 509, 512 (4) (507 SE2d 172) (1998). This rule entitles a defendant to an acquittal where the only evidence linking him to the contraband is his ownership or control over the area where the contraband was found. See *Montgomery v. State,* 204

---

[1] Diaz testified that Wells' female companion also was charged in connection with the drugs found during the search at the motel. However, the trial court would not allow Wells to question Diaz regarding the disposition of the case against her. The State listed Wells' female companion as a potential witness, but she left the State prior to trial and was unavailable to testify.

Ga. App. 534, 536 (1) (420 SE2d 67) (1992); *Bowen v. State*, 203 Ga. App. 371-372 (1) (417 SE2d 18) (1992). Here, the equal access doctrine would not apply since additional evidence linked Wells to the contraband, including his inculpatory statement that the marijuana was for his personal use and that he was taking the cocaine to someone else.

Nevertheless, Wells argues that if he had been able to introduce evidence of his companion's guilt, "there is a reasonable probability that he would have been acquitted or convicted only of the lesser offense of simple possession of cocaine." We disagree. As an initial matter, it is well established that two people may be charged jointly for the same violation of the Georgia Controlled Substances Act. See *Felix*, supra; *Ellison v. State*, 233 Ga. App. 637 (504 SE2d 779) (1998); *Coleman v. State*, 229 Ga. App. 642 (494 SE2d 549) (1997). Accordingly, we fail to see how the alleged guilt of Wells' companion for the same crime would exculpate Wells.

Wells cites *Walker v. State*, 260 Ga. 737 (399 SE2d 199) (1991) and *Henderson v. State*, 255 Ga. 687 (341 SE2d 439) (1986) for the proposition that the "evidence of the guilt of another tends to exonerate the defendant and is clearly exculpatory." We note, however, that neither of these cases involves charges of joint possession of contraband. "Although . . . a defendant may not be prevented from introducing evidence of a co-defendant's [guilt] where the [other's guilt] is highly relevant to a central issue in the case, the relevance of [Well's companion's guilt] was never demonstrated at trial." *Garcia v. State*, 155 Ga. App. 445, 446 (1) (271 SE2d 13) (1980). "[S]ince two or more persons may be convicted of possession of the same contraband, there is nothing about [the juvenile's guilt] which is on its face inconsistent with the case against [Wells]." Id. Thus, the trial court correctly concluded that any evidence of the juvenile's guilt contained in the juvenile court records was not exculpatory.

2. Wells also asserts that the trial court erred in denying his motion for a mistrial based upon the State's failure to provide him with a videotape of his arrest until mid-trial. Wells contends that the tape contained exculpatory material which the State was obligated to provide in accordance with *Brady* and that the State's failure to provide this tape prior to the *Jackson-Denno*[2] hearing prevented him from receiving a fair trial.

At the time of Wells' arrest, the Gwinnett police were experimenting with the use of video cameras. According to Diaz, part of the search was videotaped. Although the State did not put the tape in evidence, it allowed Wells' attorney to view the tape and stipulated to

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

its admissibility in the event that Wells chose to tender the tape. Pretermitting the issue of whether the videotape, in fact, contained exculpatory material, it is well established that *"Brady* is not violated when the evidence is made available during the trial, as occurred here." *Jordan v. State*, 211 Ga. App. 86, 92 (2) (438 SE2d 371) (1993); see also *Herring v. State*, 224 Ga. App. 809, 813 (2) (481 SE2d 842) (1997).

Although Wells claims that he should have been given an opportunity to review the tape prior to the *Jackson-Denno* hearing, we fail to see how the tape would have benefited him. At the *Jackson-Denno* hearing, Wells testified that Diaz never advised him that he was under arrest nor did Diaz read him his *Miranda*[3] rights. However, after the State provided Wells' attorney the videotape during trial, she stated that "they have Officer Diaz on the tape administering the *Miranda* warnings, they have Mr. Wells acknowledging the *Miranda* warnings." Thus, rather than benefiting Wells at the hearing, the videotape was more likely to harm him.

Accordingly, Wells has not shown that delayed disclosure deprived him of a fair trial. See *Herring*, supra. Under these circumstances, the trial court did not err in failing to grant Wells' motion for mistrial.

3. Wells argues that the trial court erred in refusing to suppress statements he made following his arrest because he made the statements under duress.[4] During the *Jackson-Denno* hearing, Diaz testified that, after he arrested Wells and read him his *Miranda* rights, Wells admitted that he was taking the crack cocaine to someone else, and that the marijuana was for personal use. Diaz denied threatening Wells, hitting Wells or promising any benefit in exchange for this statement. Wells, on the other hand, testified that Diaz punched him, beat him, and choked him. Despite this alleged abuse, Wells claims he told Diaz only that "there's some weed in there," but that he did not say it was his.

Thus, the evidence was in conflict as to whether Wells voluntarily made incriminating statements. "The question of whether a post-*Miranda* custodial statement is admissible depends on whether, under the totality of the circumstances, there was a knowing and voluntary waiver of rights." *Nizer v. State*, 221 Ga. App. 301, 303 (471 SE2d 254) (1996). "In such cases where the testimony is in dispute,

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] Wells also contends that Diaz did not read him his *Miranda* rights. However, this contention is contradicted by his attorney's statement that the videotape showed Diaz reading Wells his *Miranda* rights. We note that "[i]n resolving appellate issues as to confession voluntariness and whether appellant was adequately advised of and waived his *Miranda* rights, an appellate court may consider all evidence of record, not merely that introduced at the *Jackson-Denno* hearing." *Rachell v. State*, 210 Ga. App. 106 (2) (a) (435 SE2d 480) (1993).

the trial court's determinations of fact and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous. *Sanders v. State*, 257 Ga. 239 (1) (357 SE2d 66) (1987). The trial court's findings in this case were not clearly erroneous." *Clark v. State*, 189 Ga. App. 68 (2) (374 SE2d 783) (1988).

4. Wells contends that the trial court erred in allowing the State to present evidence of similar transactions. Specifically, Wells claims the trial court erred in allowing the State to introduce testimony from several law enforcement officers regarding other drug cases against Wells, some of which had been nolle prossed as part of a negotiated plea.

Contrary to Wells' contention, "[t]he trial court did not err in admitting evidence of [the] prior similar transaction[s]. Prior crime evidence is admissible when the State satisfactorily makes the three affirmative showings required by *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991). See also Uniform Superior Court Rule 31.3 (B)." *Brundage v. State*, 231 Ga. App. 478, 480 (2) (499 SE2d 408) (1998). The State must show (1) that the evidence of the similar crime is admitted for an appropriate purpose such as to show motive or intent; (2) that there is sufficient evidence to establish the accused committed the independent act; and (3) that there is a sufficient connection or similarity between the two crimes that the former tends to prove the latter. *Williams*, supra, 261 Ga. at 642.

Here, the State introduced evidence of three similar transactions. Officer Jolly testified that in November 1989, he arrested Wells after he found 13 individually wrapped pieces of crack cocaine in his possession. Officer Diaz testified that in July 1990, while executing a search warrant at Wells' residence, he found 40 pieces of crack cocaine wrapped in individual plastic bags and marijuana. Officer Halcomb testified that he arrested Wells in January 1991 after he made two purchases of crack cocaine from Wells.

Wells argues that evidence of the prior transactions should not have been admitted because they were not factually similar to the present case. We note, however, that "[t]he independent act does not have to be identical in character to the charged offense if there is a sufficient connection between them." (Punctuation omitted.) *Brundage*, supra. In all three prior transactions, Wells either possessed or sold crack cocaine. Two of the prior transactions involved individually wrapped items suggesting intent to distribute. Accordingly, we agree with the trial court's conclusion that there was sufficient connection between the prior incidents and the offense charged to warrant their admission. See *Hatcher v. State*, 224 Ga. App. 747, 752 (3) (482 SE2d 443) (1997).

Wells also claims that the State should have been estopped from introducing the cases that had been nolle prossed since he had not

been advised that these incidents could be used against him at a later date. This argument is without merit. "It is well settled that there need not be a criminal charge or conviction relating to a similar offense for it to be admissible." *Randolph v. State*, 198 Ga. App. 291, 292 (2) (401 SE2d 310) (1991). In that regard, we have allowed a charge that has been nolle prossed to be used as evidence of a similar transaction since "[t]he mere entry of nolle prosequi does not indicate an absence of the commission of a criminal act or forever clear one of the charges brought against him." (Punctuation omitted.) *Richards v. State*, 222 Ga. App. 853, 855 (2) (476 SE2d 598) (1996). Accordingly, the mere fact that the charges against Wells had been nolle prossed did not bar the State from using them as similar transactions. Id.

5. Wells claims that the trial court erred in denying his motion for mistrial following Diaz's "sua sponte" comments regarding a prior guilty plea that "impermissibly impugned his character." This claim is meritless.

> The decision whether to grant a mistrial lies within the discretion of the trial court. We must determine whether the court abused its discretion in denying the motion for mistrial, considering, among other factors, the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

*Williams v. State*, 214 Ga. App. 834, 835 (2) (449 SE2d 532) (1994).

After Diaz testified about the prior incident where he found 40 packages of cocaine at Wells' residence, Wells' attorney cross-examined him regarding the charges brought against Wells. Specifically, she asked him "Are you . . . familiar with the disposition of the case?" Diaz responded that a plea bargain had been entered into by the defendant in which he pled guilty to some of the charges and others were nolle prossed. Wells' attorney moved for a mistrial, claiming that Diaz's answer was non-responsive and served to place Wells' character in evidence.

"Where counsel on the cross-examination of a witness takes a chance by propounding a dangerous question, [she] will not be heard to object to the answer, no matter how prejudicial it may be, if the answer is a direct and pertinent response to the question." (Punctuation omitted.) *Query v. State*, 217 Ga. App. 61, 64 (4) (456 SE2d 704) (1995). "Although not directly responsive to the question posed, the officer's response was directed toward answering the question and was not unresponsive." *Nichols v. State*, 200 Ga. App. 297, 299 (2) (407 SE2d 493) (1991). Under these circumstances, the trial court did not abuse its discretion in refusing to grant a mistrial. *Query*, supra.

6. During the sentencing phase, the State offered a certified copy

of Wells' prior plea of guilty, relating to violations of the Georgia Controlled Substances Act. Pursuant to OCGA § 16-13-30 (d), a second conviction for possession with intent to distribute cocaine is punishable by life imprisonment. Wells objected to the introduction of the guilty plea for sentencing purposes, claiming that the State produced no evidence that the plea was voluntary. At the sentencing hearing, Wells presented no evidence to support his contention that his plea was not voluntary, but simply argued that the State had the burden of proving voluntariness.

In *Pope v. State*, 256 Ga. 195 (345 SE2d 831) (1986), our Supreme Court held that

> [a] plea of guilty that is invalid under *Boykin* [*v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969)] may not be used to enhance punishment in a subsequent trial. . . . [O]nce the defendant raises the issue of intelligent and voluntary waiver with respect to prior guilty pleas, the burden is on the state to establish a valid waiver. *Boykin* states that " '(p)resuming waiver from a silent record is impermissible.' " Id. at 242.

(Citation omitted.) Id. at 209-210 (17).

After the decision in *Pope*, however, the United States Supreme Court clarified its holding in *Boykin*, stating that "*Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Parke v. Raley*, 506 U. S. 20, 30 (113 SC 517, 121 LE2d 391) (1992). Thus, the U. S. Supreme Court held that "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under *Boykin*." Id. at 34.

In *Nash v. State*, 233 Ga. App. 75 (503 SE2d 23) (1998), cert. granted, this Court considered the effect of *Parke* on the Supreme Court of Georgia's decision in *Pope*. Because *Pope* was based on an interpretation of the U. S. Constitution, and the U. S. Supreme Court had subsequently interpreted the Constitution in a different manner, a unanimous Court of Appeals held that *Parke* was controlling, and that, when considering the admissibility of a prior guilty plea for purposes of recidivist sentencing, a trial court is "authorized to . . . apply the presumption of regularity which is deeply rooted in our American jurisprudence and in Georgia is codified in OCGA § 24-4-24 (b) (1)." (Punctuation and footnote omitted.) *Nash*, supra at 79.[5]

---

[5] Although the Supreme Court's decision in *Mize v. State*, 269 Ga. 646, 657 (15) (501 SE2d 219) (1998), implicitly calls into question our decision in *Nash*, the Supreme Court did

In this case, the trial court was authorized to apply a presumption of regularity to the prior convictions, and Wells offered no evidence to rebut the presumption that his plea was voluntary. Accordingly, the trial court did not err in admitting the prior plea for sentencing purposes. *Nash*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 18, 1999.

*Leslie J. Cardin*, for appellant.

*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney*, for appellee.

---

not overrule *Nash* in that case, nor did it consider the U. S. Supreme Court's decision in *Parke*. Accordingly, and in light of the fact that the Supreme Court has granted certiorari in *Nash*, we adhere to our unanimous decision in *Nash*. See OCGA § 15-3-1 (unanimous whole-court decision may not be "overruled or materially modified except with the concurrence of all the Judges").